RK DEVELOPMENT CORPORATION *v.* CITY OF NORWALK
ET AL.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued February 7—decided April 23, 1968

*Edward J. Zamm,* special counsel, with whom, on the brief, was *Thomas A. Flaherty,* corporation counsel, for the appellants-appellees (defendants).

*Emanuel Margolis,* for the appellee-appellant (plaintiff).

RYAN, J. The plaintiff, the owner of a tract of land, 4.641 acres in area, located in a B residence

zone in the city of Norwalk, filed with the planning commission of the city an application for approval of its plan for a planned residential development to be constructed on its land. The proposed development is a permitted use under the building zone regulations in a B residence zone. The planning commission reviewed the plan over a period of several months, held two public hearings, and, on December 22, 1965, approved the plan. It was then transmitted to the common council on January 6, 1966. On January 11, 1966, the common council referred the plan to its committee on public works. On February 24, 1966, the public works committee at a special meeting of the common council recommended to the council that the application be denied. The motion to deny the plaintiff's application was approved by the council. The plaintiff appealed to the Court of Common Pleas, alleging that Thomas G. Hannon, a member of the common council, was a participant in and an active leader among persons in the neighborhood opposing the plaintiff's plan, that he testified in opposition thereto before the planning commission, that the pertinent regulations did not require approval of the plan by the council and that, in any event, its action was unlawful, arbitrary, and in abuse of its discretion. The trial court in its memorandum of decision found that the council, in considering the plaintiff's application, was acting as a legislative body and for that reason its action could not be reversed unless it was manifestly and palpably incorrect, and that the procedures of the planning commission and that of the council were correct. The court, however, concluded that Hannon, an elected legislative official, had, through his wife, a financial interest in land adjoining that of the plaintiff and that his efforts before the planning

commission to defeat the plaintiff's application conflicted with his duty as a councilman. The appeal was sustained for this reason. The defendants then appealed to this court, and the plaintiff filed a cross appeal.

The defendants assign error in the court's conclusion that the activities of councilman Hannon conflicted with his public duty and urges that, although Hannon openly opposed the plaintiff's application before the planning commission, worked actively with his political constituents in the ward which he represented in the council, and had a financial interest, through his wife, in real estate adjoining that of the plaintiff, his conduct as a member of the council, a legislative body, was entirely proper. The finding of the trial court indicates that Hannon attended the common council meeting at which the disapproval was voted but did not take part in the vote on the matter in question, that he in fact removed himself from within the council rail and was present in the gallery during the vote, and that he did not discuss the plaintiff's application with any member of his political group in the council. The defendants' claim is predicated on the court's conclusion that the common council was acting in a legislative capacity. The instant case was decided by the trial court prior to our decision in the recent case of *J & M Realty Co.* v. *Norwalk,* 156, Conn. 185, 190, 239 A.2d 534, wherein we held that the common council of the city of Norwalk, in passing upon an application for subdivision approval, was performing the function of a planning commission and acted in an administrative, rather than a legislative, capacity. The council was performing the same function in the instant case and was, of course, acting administratively.

Section 8-21 of the General Statutes (Rev. to 1966) provides, in part, as follows: "No member of any planning commission and no member of any municipal agency exercising the powers of any planning commission, whether existing under the general statutes or under any special act, shall appear for or represent any person . . . in any matter pending before the planning . . . commission . . . or agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the commission hearing such matter." "Although applications for subdivision approval must first be presented to the planning commission, the power of final approval lies only with the common council. The primary function of the planning commission is to examine and screen all subdivision applications and report its recommendations to the common council. . . . It is quite apparent that the authority of the planning commission is secondary to that of the common council, which has the ultimate power of approval or disapproval of all subdivision applications." *J & M Realty Co.* v. *Norwalk,* supra, 189. Hannon, a member of the common council, an agency which in this instance was exercising the powers of a planning commission, appeared before the planning commission on behalf of his wife and other constituents in the area in opposition to the plaintiff's plan. Although the planning commission is an entity separate in membership and authority from the common council, it is an arm of the council and performs important preliminary work and makes recommendations on all plans submitted to it which must ultimately be passed on by the council. For this reason, Hannon's activities were within the prohibition of the statute. There is nothing in the record before us to indicate that Hannon exerted

any improper influence on his associates in the council, and we impute no such influence to him by our decision in this case. The trial court, however, has expressly found that he put himself on record at the hearing before the planning commission with full knowledge that his stated opposition would later be transmitted by the commission to the council. "The evil lies not in influence improperly exercised but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power." *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 500, 191 A.2d 250; see *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498, 234 A.2d 838; *Josephson* v. *Planning Board,* 151 Conn. 489 493, 199 A.2d 690; *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162; *Luery* v. *Zoning Board,* 150 Conn. 136, 147, 187 A.2d 247; *Lage* v. *Zoning Board of Appeals,* 148 Conn. 597, 604, 172 A.2d 911; *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 496, 134 A.2d 250. We must conclude, therefore, that the trial court was not in error in sustaining the plaintiff's appeal.

The plaintiff, in its cross appeal, assigns error in the conclusions of the trial court. Two basic claims are made: First, planned residential developments do not require approval by the common council; and, second, even if such approval was required, the council's action was groundless and arbitrary.

In determining whether planned residential developments require approval by the common council, we must examine the Norwalk regulations concerning planned residential developments contained in § 3 (A) of the Norwalk zoning regulations, the per-

tinent portions of which are printed in a footnote.[1]

The "agency now or hereafter designated by law as the proper agency for the approval of sub-division plots" is determined by the provisions of No. 214 of the 1947 Special Acts (25 Spec. Acts 302), as amended by No. 616 of the 1955 Special Acts (27 Spec. Acts 556), under the terms of which city planning was established in the city of Norwalk. The act requires that subdivision plans be submitted first to the planning commission for its approval and then to the common council whose approval is necessary before the plan can become effective. See *J & M Realty Co.* v. *Norwalk*, supra. The provisions of the regulations and the special acts are clear and unambiguous, and it is mandatory that plans for planned residential development be processed in the same manner as applications for subdivision plans and receive the approval of the common council.

The plaintiff also urges that the action of the council was groundless and arbitrary. It is fundamental that in passing on the plaintiff's application the council, acting in its administrative capacity, is to be controlled by the regulations for planned residential development and the regulations concerning subdivisions adopted for its guidance. If the plan

---

[1] "[Norwalk Zoning Regs. § 3 (A) (1929, as amended).] . . . 2. Definitions: a. 'Planned Residential Development' shall mean any combination or group of buildings intended for multi-family occupancy sometimes referred to as 'Garden Type Apartment Buildings', which buildings shall not occupy a greater percentage of the planned area than is provided herein and which shall be constructed on such area in accordance with a site plan reviewed and approved by the agency now or hereafter designated by law as the proper agency for the approval of sub-division plots and subject to the conditions recited herein. . . .

"3. Regulations for Planned Residential Developments: . . . u. All requirements of the provisions regarding subdivision, including the posting of performance bonds, shall be deemed applicable herein."

submitted conforms to these regulations, the council has no discretion or choice but to approve it. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 675, 236 A.2d 917; *Purtill* v. *Town Plan & Zoning Commission,* 146 Conn. 570, 573, 153 A.2d 441; *Langbein* v. *Planning Board,* 145 Conn. 674, 679, 146 A.2d 412; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 83, 103 A.2d 814. The council gave the following reason for disapproval of the plaintiff's plan: "The safety for the sake of the children as well as the people living up there; the welfare of the community and also the health hazards." Section 3 (A) (2) (b) of the regulations for planned residential developments provides as follows: " 'Review and approval' shall mean that the reviewing agency as hereinbefore provided shall review the site plans with particular reference to the following regulations: (a) The design of facilities, the use of which may cause nuisance to the adjacent properties, such as the provisions of Section 3, Subsections 1 to r herein, shall be reviewed for compliance. (b) Traffic Access—All proposed traffic access ways shall be adequate in number, width, grade, alignment and visibility from access points, and are located at the proper distance from street corners, entrances to schools and other places of assembly. (c) Circulation of traffic for parking—The interior circulation system shall be adequate and the required parking spaces shall be equally accessible. (d) Disposition of open space and recreational areas—Such spaces shall be dispersed in such a way as to insure the safety and welfare of resident children." Additional regulations requiring consideration by the council are set forth in § 3 (A) (3). These are detailed and specific in their requirements.

The reason given by the council for its disapproval was vague, uncertain in meaning and provided no information to the plaintiff to enable it to know wherein the plan submitted failed to satisfy the requirements of the regulations. Certainly if the plan had failed in any respect to conform to the regulations, it was the duty and obligation of the council so to indicate. This it failed to do. The council cannot, in utter disregard of the regulations, disapprove the plan for a reason it would not be required to apply to all applications for planned residential developments as to which the same reason obtained. It would amount to substitution of the pure discretion of the council for a discretion controlled by fixed standards applying to all cases of a like nature. It would deprive the plaintiff of its property without due process of law. *Beach* v. *Planning & Zoning Commission,* supra, 85. There was no regulation prohibiting the plaintiff's plan for a planned residential development in Norwalk for any reason assigned by the council, and its action in refusing approval was illegal.

There was error in the conclusions of the trial court so far as it held that the common council, in passing on plans for planned residential developments, acted in its legislative capacity; that in considering such applications it could act for reasons best known to itself; and that the reason given by the common council for its final decision was valid. The judgment of the trial court sustaining the plaintiff's appeal, however, was correct.

There is no error.

In this opinion ALCORN, HOUSE and THIM, Js., concurred; COVELLO, J., dissented.