[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
INTRODUCTION
The present case involves an appeal by the plaintiffs Aaron Friedman and Dennis Angel from a decision by the Rocky Hill Planning and Zoning Commission (hereinafter, the "Commission") denying their application for site plan approval. The plaintiffs own the premises known as 2009 Silas Deane Highway which is located on the westerly side of Silas Deane Highway at the intersection of Parsonage Road. The property is zoned commercial and consists of four lots now occupied by three buildings: one small commercial and two single family homes.
On September 7, 1989, the plaintiffs applied for site plan approval for a three story office building on said site. After a public hearing on November 15, 1989, the matter was continued to January 8, 1990 at which time the Commission voted to deny the application. After publication of the denial, the plaintiffs filed the present appeal on February 5, 1990. The matter was heard by this court on March 8, 1991. The parties stipulated to evidentiary issues concerning aggrievement but requested the court to individually (without counsel) view the site. The court did view the site on April 5, 1991.
 II.
DISCUSSION
 A.
General Statutes 8-8(a) restricts those people that may appeal a Commission decision to those who are either aggrieved or those who own land which abuts . . . the land involved in the decision. Aggrievement must be both properly pleaded and proved. Walls v. Planning and Zoning Commission, 176 Conn. 475,479 (1979). The parties stipulated at the hearing that each plaintiff owns an undivided 1/2 interest in the real property located at 2009 Silas Deane Highway, Rocky Hill, Connecticut. This court finds that the plaintiffs have a specific and personal interest which has been injuriously affected by the Commission's decision and are, therefore, aggrieved. Bossert Corporation v. Norwalk, 157 Conn. 279, 285
(1968).
 B.
In reviewing a site plan application, the Commission acts in an administrative capacity. Norwich v. Norwalk Wilbert CT Page 4337 Vault Co., 208 Conn. 1, 12 (1988). It has "no independent discretion beyond determining whether the plan complies with the applicable regulations. . . ." Allied Plywood, Inc. v. Planning Zoning Commission, 2 Conn. App. 506, 512 (1984). Thus, if a site plan conforms with the regulations, the Commission must approve it. Kosinski v. Lawlor, 177 Conn. 420,427 (1979).
The Commission must state the reasons for denying or modifying a site plan. General Statutes 8-3(g). "Where a zoning authority has stated its reasons [for its action], in accordance with General Statutes 8-3, the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." DeMaria v. Planning Zoning Commission, 159 Conn. 534, 540, (1970).
Moreover, where a site plan application is denied, the decision of the agency must be sustained if even one of the reasons is sufficient to support it. Goldberg v. Zoning Commission, 173 Conn. 23, 26 (1977). The court, of course, may not substitute its own judgment for that of the zoning authority. Id., 27. Determination of factual issues and credibility of witnesses are matters within the province of the agency. Feinson v. Conservation Commission, 180 Conn. 421, 425
(1980). Finally, where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. Summ v. Zoning Commission, 150 Conn. 79, 89
(1962).
 C.
At the January 8, 1989 meeting, Commissioner Webster, moved to disapprove the plaintiffs' application for ten specific reasons. (Return Items 20; 21). The motion was seconded and after discussion, the Commission voted to deny based on the stated reasons. (Return Item 20). In stating its reasons, as a body, the Commission complied with General Statutes 8-3(g). See Welch v. Zoning Board of Appeals,158 Conn. 208, 214 (1969).
The plaintiffs have attacked each of those reasons and at trial the Commission indicated that it would not defend the appeal based on reasons four, six and nine.
1.
Reasons one, three, eight and perhaps ten concerned CT Page 4338 issues of traffic safety. The Commission's concern with an increase in traffic on Parsonage Street is twofold: (1) Parsonage is the main access road to the high school less than 1/2 mile from the site and (2) the Silas Deane Highway — Parsonage Street intersection has one of the highest accident rates in town. The Commission also noted that the traffic data was not supplied by a traffic engineer and that the testimony that all traffic will use the Silas Deane entrance was not to be believed.
Subsection 9.46(a)(3) requires the Commission to analyze an application in light of the "capability of adjacent and feeder streets to accommodate the projected traffic volumes." Subsection 9.46(a)(8) mandates a review of the "location of any points of ingress and egress, and arrangement of off-street parking facilities" and subsection 9.46(d) concerning traffic requires a consideration of certain matters including:
 a. Ease of entrance to, and exit from the development, with a minimum of disturbance to outside traffic flow shall be considered of prime importance. . .
 d. Consideration shall be given to the inclusion of arterial thru streets with proper provisions made to minimize the effects traffic through residential areas. In all cases, a traffic study shall be prepared by a licensed Professional Engineer addressing the impact of the development upon the street system in the area . . .
 e. The interior traffic circulation pattern shall be safe and aesthetically in harmony with the stated objectives of the district. Design items to consider in laying out the interior system shall include:
(1) Work with, not against the topography;
 (2) Utilize curves to break up the monotony of straight drives;
 (3) Separate pedestrian and vehicular traffic where possible.
2.
Consideration of traffic issues has always been proper CT Page 4339 in land use review. See, for instance, Burnham v. Planning Zoning Commission 189 Conn. 261, 262 (1983); Calandro v. Zoning Commission 176 Conn. 439, 441 (1979); Housatonic Terminal Corporation v. Planning Zoning Board, 168 Conn. 304,307 (1975); Forest Construction Co. v. Planning Zoning Commission, 155 Conn. 669, 675 (1967); Blakeman v. Planning Commission, 152 Conn. 303, 307 (1965) and Crescent Development Corporation v. Planning Commission, 148 Conn. 145, 149 (1961). Though not in their brief, plaintiffs have argued that the Commission's traffic considerations are rendered irrelevant as a result of our Supreme Court's decision in TLC Development Inc. v. Planning and Zoning Commission, 215 Conn. 527 (1990). In that case, also involving site plan review, the court affirmed the trial court's reversal of the commission's decision denying a site plan application for a shopping center based, inter alia, on increased traffic on local streets. The court held that as the zoning regulations did not include, other than as general objectives, specific provisions covering off site traffic considerations, these concerns alone could not be used as the basis for the denial. The court also went on to note that as the use was permitted under the zoning regulations, the denial was improper as:
 The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district. Id., 533 citing, Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979).
The court also indicated that in TLC, supra, that its prior decision in Goldberg v. Zoning Commission, 173 Conn. 23 (1977) sustaining the denial of a site plan application for a shopping center due to off site traffic considerations was effectively overruled by the legislature's enactment of P.A. 78-104 (allowed the modification or denial of a site plan application only for grounds set forth in the regulations). The Beit Havurah, supra, and TLC, supra, rule was also utilized by the Appellate Court in its recent decision of Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370
(1990), in which it concluded that as:
 The plaintiff's land is located in a residential zone and its plan was to use the property for residential purposes, the commission could not weigh offsite traffic concerns, municipal services required by the development, property values, or the CT Page 4340 general harmony of the district when deciding whether to approve the plaintiff's subdivision application. Id., 375.
Plaintiffs' position is that TLC, supra, and Sowin, supra, preclude a denial based on offsite traffic issues. At first glance, this rule would seem to be in clear conflict with the aforementioned zoning regulations requiring the submission and review of relevant traffic data. Simply put, if further inquiry is precluded, there is no need for the collection and submission, let alone the review, of the data required in the regulations. It would render both the Commission's and the applicant's obligations to relatively facile and meaningless tasks. The problem with this interpretation, however, is that a commission's review is multifaceted. The statutorily mandated concerns require site plan review from different perspectives. For instance, safety is a consideration as the legislature has indicated that the regulations may include "conditions necessary to protect the public health, safety. . . ." Additionally, traffic impact is a consideration as "such regulations . . . shall be designed to lessen congestion in the streets. . . ." General Statutes 8-2. The TLC, supra, rule does not obviate the need for a traffic safety analyses.
This court believes that the present case is distinguishable from the fact pattern in Sowin, supra, where the subdivision involved only eleven houses with data presented by a traffic engineer who stated that the impact would be minimal, Sowin, supra, 372. The present case involves estimates of 400 vehicles per day and sixty vehicles at peak hours at an already congested intersection but without a traffic study. The case may more closely resemble the fact situation in TLC, supra. But there is another issue to address before the court analyzes TLC's affect on this matter. That issue concerns the lack of information submitted to the Commission.
The Commission's anxiety over the traffic impact is underscored by the plaintiffs' failure to provide the traffic study as required by subsection 9.46 d.d. (Return Item 14, pp. 5, 9, 10). Thus, when asked about the traffic count, the plaintiffs' engineer acknowledged the proposed figures were not his own but rather based on state information. (Return Item 29, p. 4). He indicated that the state had no traffic counts for Parsonage Street and that he did not put a counter on Parsonage Street (Return Item 26, pp. 16-17). In response to a question from Commissioner Surwillo concerning egress from the property and safety concerns, the engineer indicated that "he did not have a report". (Return Item 29, p. CT Page 4341 33). A similar response was given to Commissioner Webster. (Return Item 29, p. 39). Finally, the engineer admitted that he was not trained as a traffic engineer and that was why he did not prepare a traffic report. (Return Item 29, pp. 47-48).
This lack of information clearly troubled the Commission. (Return Item 20). Reason Ten, for instance, states "the applicant here presented a minimum amount of information for the commission to draw its conclusion from; we must, therefore, apply our personal knowledge of the site to a greater extent than is normally expected of us." (Return Item, 20, p. 10). Likewise, Reason Eight indicates that "no or insufficient information was submitted as to the capability of the adjacent collector street, Parsonage Street or its feeder streets to handle the projected traffic volume." (Return Item 20, p. 8). In Reason One, the Commission stated that "the testimony of the applicant's engineer, who is not a traffic engineer, that all Traffic will use the Route 99 (Silas Deane) entrance is not believed" (sic).
Apparently, the lack of traffic information led to a credibility problem with the plaintiffs' engineer as well. It need hardly be said that "credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Feinson v. Conservation Commission, supra. "An administrative agency is not required to believe any witness even an expert." Manor Development Corporation v. Conservation Commission, 180 Conn. 692,697 (1980). Moreover, considerations of traffic safety have historically not required testimony of a traffic engineer, Gulf Oil Corporation v. Board of Selectmen,144 Conn. 61, 65 (1956) as they could be determined through personal knowledge and observation of the commission. Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669,675 (1967); Dram Associates v. Planning and Zoning Commission, 21 Conn. App. 538, 542, cert. denied 215 Conn. 817
(1990). The requirement to file a complete application is the sine qua non of any request for an administrative permit. Boardsen v. Zoning Board of Appeals, 20 Conn. App. 462, 464
(1990). See also, generally, SSM Associates Limited Partnership v. Planning and Zoning Commission, 15 Conn. App. 569
(1988). Both TLC, supra, 529-530 and Sowin, supra, 375 recognized that the application must satisfy the regulations. The traffic study herein, however, is no more than a two line note on the site plan stating:
 19. Traffic Volume: 19600 (1983), 19700 (1987) and 19800 (1989 estimate) (Actual Count per CT DOT.) Traffic Volume estimate: CT Page 4342 19800 and 400 = 20,200 vehicles. See Item 29 for estimate source.
Obviously, the Commission (as well as the plaintiffs' engineer) felt that this note did not qualify as a traffic study. This court is in agreement.
Therefore, notwithstanding the decisions of Beit Havurah, supra, and TLC, supra, this court believes that the appeal can properly be denied as at least one of the reasons is sufficient to support the denial. Goldberg v. Zoning Commission, supra. This court does not believe that the rule of TLC, supra, and Sowin, supra, preclude a proper safety analyses by a commission. See, Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 190, 194 (1987). A traffic study may show that the ingress and egress to the building should be redesigned. It may well be that the conclusive presumption of no adverse affect on traffic will be borne out with a complete application. It is the applicants' responsibility to provide that information. At this time, it has not.
 D.
The impact of TLC, supra, and Sowin, supra, cannot be downplayed. They may indeed curtail a Commission's discretion. Yet, their arrival is hardly unforeseen. This court believes that they are part of an evolution of a concept first noted in such cases as Beach v. Planning Zoning Commission, 141 Conn. 79 (1954); DeMaria supra, 540; RK Development Corporation v. Norwalk, 156 Conn. 369 (1968) and then in Kosinski v. Lawlor, supra, 423. Those cases preclude a commission from denying an application based on vague or undefined considerations or reasons outside the scope of the statutes or regulations. In RK Development, supra, the court sustained an appeal from a board's (the common council) denial of an application for vague reasons. The court stated, at 377, that "the council cannot in utter disregard of the regulations disapprove the plan for a reason it would not be required to apply to all applications. . . ." Id. The new cases tacitly adopt the position of Justice Loiselle in his dissent in Goldberg, supra, in a case which, as mentioned, upheld the town's disapproval of a site plan for a shopping mall on the grounds of lack of proof of need, impact on the neighborhood and lack of safeguards to protect the neighborhood. Justice Loisell stated that "if the commission could not establish adequate safeguards it should not have changed the zone in 1966. Once the commission has changed the zone, it cannot disapprove a site plan for a permitted use because it does not know what to do. Id., 34. CT Page 4343
 E.
As mentioned, the Commission is not defending Reasons Four, Six and Nine. That leaves Reasons Two, Five and Seven as the others all concern traffic safety. Reasons Two and Seven (impact on the area) do implicate the TLC, supra, rule. While the court notes that the Commission was concerned about a lack of information in these areas, it would seem that any submission would not overcome the conclusive presumption of no adverse affect. While the court need not address Reason Five, the buffer requirement, at this time, it seems clear that if the height of the building conformed to the bulk requirements, that height alone should not be an issue. The Commission did seem concerned with the paucity of information on the buffer. (Return Item 20, p. 18).
 III.
Conclusion
In the present case, the plaintiffs have failed to file an application that meets the Commission's regulations.
The plaintiffs' appeal is hereby dismissed.