[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Richard Pollio, Trustee, appeals pursuant to Conn. Gen. Stat. Sec. 8-8 from a decision of the defendant, Ellington Planning and Zoning Commission (hereinafter "Commission") approving, with conditions, the plaintiff's "Application for Approval of a Modified Site Plan" which sought to add two parking spaces and a second story to a commercial self service storage facility. The facility, which was the subject of a previously approved site plan application, was to consist of two one-story buildings. The plaintiff claims that in approving the application with conditions, the Commission acted illegally, arbitrarily and in abuse of its discretion by (a) approving the application with conditions although it complied with all the requirements for site plan approval set forth in the zoning regulations; (b) approving the application with conditions although the site plan had previously been approved by the Commission, "and a material change had taken place on site so that certain rights had vested in the plaintiff as to the location of the existing foundations on site;" and (c) ordering the modification of the site plan to provide for a twenty foot lane between the westerly end of each building and the westerly property line of the site "absent evidence to support the necessity for said modification."[1]
The plaintiff submitted an application dated March 23, 1990 to the Commission for approval of a modified site plan to permit the addition of two parking spaces and a second story to a previously approved one-story self service storage facility. The Commission held a public hearing on the CT Page 5215 plaintiff's application on May 7, 1990, which was continued on June 4, 1990.
At the Commission's meeting later in the evening of June 4, 1990, the Commission voted to approve the plaintiff's application subject to the following conditions:
 1. That sidewalks be installed along the entire frontage of the property.
 2. Topgraphic information for existing and final grades be submitted to the town engineer for review of sediment and runoff controls. These documents must be submitted prior to the issuance of any building permit for the two story building and be approved by the town engineer.
 3. That a landscaping plan be submitted to the town planner for his review and approval. That landscaping be completed prior to the issuance of a certificate of occupancy.
 4. A 20' roadway be provided at the west end of both of the proposed buildings such that a one-way road pattern may be developed around both of these buildings.
 5. That a lighting plan be provided that does not create and offsite glare.
Notice of the Commission's decision was published on June 18, 1990 pursuant to Conn. Gen. Stat. Sec. 8-3(g). The plaintiff's appeal was timely served on the defendants on June 22, 1990.
A hearing was held before this Court on March 14, 1991. At the hearing, in order to show aggrievement as required by Sec. 8-8, the plaintiff testified that he is the owner of the property which is the subject of this appeal. The plaintiff also introduced a certified deed of ownership. An owner of the subject property is aggrieved and is entitled to bring an appeal. See Bossert Corp. v. Norwalk, 157 Conn. 279, 285
(1968). The plaintiff is aggrieved.
The decision of a zoning authority will be disturbed only if it is shown that it was arbitrary, illegal or an abuse of discretion. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 573 (1988). Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. Primerica v. CT Page 5216 Planning and Zoning Commission, 211 Conn. 85, 96 (1989). The burden of proof that the Commission acted improperly is upon the plaintiff. Blaker v. Planning and Zoning Commission,212 Conn. 471, 478 (1989).
Conn. Gen. Stat. Sec. 8-3(g) provides, in part, that, "[a] site plan may he modified or denied only if it fails to comply with the requirements already set forth in the zoning . . . regulations." See Allied Plywood, Inc. v. Planning and Zoning Commission, 2 Conn. App. 506, 512 (1984). In ruling upon a site plan application, the planning and zoning commission acts in its ministerial capacity, rather than in its quasi-judicial or legislative capacity. Id. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations. Id.; see Kosinski v. Lawlor, 177 Conn. 420, 427 (1979). "If the plan submitted conforms to these regulations, the . . . [commission] has no discretion or choice but to approve it." Allied Plywood, Inc., 2 Conn. App. at 512, quoting R.K. Development Corp. v. Norwalk, 156 Conn. 369, 375-76 (1968) (citation omitted).
The plaintiff alleges that the previous owner of the property had, after the original site plan for the one story facility was approved, complied with six conditions imposed by the Commission and obtained a building permit and zoning permit. The plaintiff then "expended substantial amounts in site development including the construction of two full foundations for the commercial storage facility" as originally approved. The modified site plan application was filed by the plaintiff after constructing the two foundations.
The plaintiff claims that in conditioning the approval of the modified site plan on the provision of a twenty foot lane between the westerly end of each building and the westerly property line of the site, the Commission had "reversed its prior decision concerning the internal traffic pattern for the site." He alleges that "[d]ue to the topography of the site, the configuration of the site and the location of the . . . two existing concrete foundations on site," compliance with the condition would require the plaintiff to remove a substantial portion of the two foundations. He argues that no change in circumstances existed to warrant the Commission's reversal of its prior decision approving the original site plan. The plaintiff contends that there was no evidence produced at the public hearing which established that the ten foot increase in the buildings' height would increase traffic. He further claims that the Commission was "prohibited from reversing its prior decision as to the internal traffic pattern for the site" because the plaintiff's substantial expenditure for site development and CT Page 5217 the construction of the two foundations "created an intervening vested right in the Applicant."
The defendant, on the other hand, contends that compliance with the condition that a twenty foot roadway be provided at the west end of both buildings is needed to satisfy the requirement of Section 7.7.d.8 of the zoning regulations regarding interior traffic circulation.[2] The defendant further alleges that the doubling of the size of the buildings by adding a second story constitutes a significant change. The defendant maintains that the record supports the legality of the Commission's actions.
After citing 7.7.d.8 of the regulations, Town Planner Baker, at the public hearing, said:
 . . . to me [section 7.7.d.8] says that we have to have a safe means of moving vehicles around the site and I think that the PAS report of No. 396 [Planning Advisory Service Report No. 396, "Standards for Self Storage Facilities"] specifically indicates that when you go to a multi-story facility that it aggravates the traffic problems that are normally associated with a self-service facility and in this case we are going an additional 10 feet higher which is going to be a multi-story, self-storage facility.
Baker further stated that:
 it says here in the PAS report that when you go into a multi-story facility that it aggravates the traffic situation and it also states that it is considered good design to put in a traffic lane of 24' with a 10' parking lane on each side. We're already not meeting even the basic tenets of good design with the site and now we're going to create a higher density on the site.
Baker testified that although "the findings in the PAS Report is that generally the access to the site is sporadic and you don't see a large number of folks on the site necessarily at one time. . .", "you will see some vehicles that will be there longer and with it being upstairs the individual not directly in front of the unit may end up staying in a situation where a vehicle will be unattended for maybe a short period of time and that will create a parking jam." Baker further testified that:
I would say a 50% increase in area is substantial, CT Page 5218 what it does is allow us an opportunity to review it essentially what the impact is going to be. What you're talking about is with an individual let's say, who is unloading a U-Haul truck to take the stuff upstairs. I don't know if you've ever unloaded a 22' U-Haul truck but it takes the better part of about an hour and a half or two hours wheeling it in or out and that's not going up the stairs or walking down a hall and packing it into a facility. So you're talking about potentially, let's say for example, that truck will be there for an hour and a half and it aggravates it by having now a second story because in the first story, the individual who is responsible for that truck would probably be right there unloading stuff into the door, that does pose a change over the conditions that were previously there. Not to place blame but it's very likely that the Commission overlooked the need for circulation around the facility when it was approved and now that the thing is back before us and it is apparently something significant enough for us to (coughing . . . cannot make out) and see if we can't fix something that was perhaps an oversight.
In response to questions as to how one vehicle would maneuver out if there were three vehicles on the premises with two cars parked and unloading, Attorney Sherlock, plaintiff's counsel, replied, "[w]hat I think I would do if someone had blocked my way is to ask them to get out of the way so I can back out." Attorney Sherlock further responded, "I think, first of all, I think you could back out, second of all practically speaking, if you're going to have at the maximum three cars on the site that something can be worked out."
 [I]t appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence.
Mynyk v. Board of Zoning Appeals, 151 Conn. 34, 38-39
(1963); St. Patrick's Church Corp. v. Daniels, 113 Conn. 132,137 (1931). "[T]he established law of this state . . . prohibits a zoning board of appeals from reversing its previous decision unless the facts and circumstances CT Page 5219 which actuated the decision are shown to have so changed as to vitiate or materially affect the reason which produced and supported it and no vested rights have intervened." Consiglio v. Board of Zoning Appeals, 153 Conn. 433, 438
(1966) (citations omitted).
The evidence in the record does not support the plaintiff's contention that the Commission "reversed its prior decision" but rather supports the Commission's argument that the second application seeking to double the storage space was a substantial change entitling the Commission to review the second application in its entirety to see if, in light of the change, the proposed site plan complied with the zoning regulations. The plaintiff focuses on the traffic pattern and claims that the Commission "reversed its prior decision concerning the internal traffic pattern for the site." Plaintiff argues that since pursuant to his application, the "internal traffic pattern for the site remained identical to the internal traffic pattern which previously had been approved" by the Commission, "[a]s the record substantiates no change in circumstances affecting the internal traffic pattern for the site, the decision of the . . . . [Commission] to reverse its prior decision concerning said issue was illegal." The Commission did not review the internal traffic pattern a second time in light of the same circumstances, but rather considered it in light of an entirely new application for approval of modified site plan submitted by the plaintiff which sought to add a second story to each of the buildings and double the storage capacity of the facility.
Even though there was evidence that the increase in the volume of traffic would be minimal, the testimony before the Commission indicates the Town Planner was concerned about the traffic circulation on the site and the effect of the added story on that circulation. The record reflects that in response to questions regarding that concern, the plaintiff offered no solutions other than "you could back out."
All the cases cited by the plaintiff dealt with a reversal of a decision based upon the same facts and circumstances as the prior decision. This case involves a second application by the plaintiff seeking approval of a facility which has twice the storage capacity as was approved in his previous application. The fact that the plaintiff did not make changes to the proposed traffic pattern along with the change in storage capacity does not preclude the Commission from reviewing the traffic pattern in light of the change in the size of the facility in order to confirm that, in light of the change, the previously CT Page 5220 approved traffic pattern continued to meet the requirements of the zoning regulations. The plaintiff has not met his burden of proving that the Commission illegally reversed its prior decision.
The plaintiff's argument that his construction of the foundations "created an intervening vested right in the Applicant which also prohibited the. . . [Commission] from reversing itself as to a change in the internal traffic pattern for the site" is without merit. The plaintiff's construction of the foundations pursuant to the first approved site plan prior to his application for approval of the modified site plan seeking to add a second story does not give the plaintiff a "vested right" to build a two story facility. The plaintiff may still construct a one story facility upon the existing foundations pursuant to the previously approved site plan and its provisions for traffic circulation.
Finally, the record adequately supports the Commission's decision that the roadway condition was necessary for compliance with the zoning regulations. "The determination of what the public interest requires is within the discretion of the commission." McCrann v. Town Plan and Zoning Commission, 161 Conn. 65, 71 (1971) (Citations omitted). The trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc., 206 Conn. at 572-73.
Section 7.7.d.8 of the Ellington zoning regulations provides that "sufficient traffic aisles and lanes for safe transit shall be provided." In light of the concerns expressed by the Town Planner at the hearing before the Commission, the Commission's decision that approval of the modified site plan to add a second story should be conditioned upon the construction of a roadway to the west of the buildings in order to comply with section 7.7.d.8 of the zoning regulations was not illegal, arbitrary or an abuse of its discretion. Accordingly, the appeal is dismissed.
HON. HOWARD SCHEINBLUM, J. SUPERIOR COURT JUDGE