[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, ARLEV Corporation, Trustee, appeals from the decision of the defendant, the East Hartford Planning and Zoning Commission (hereinafter "Commission"), denying its subdivision application for the construction of two single-family residences on approximately 4.85 acres of land located between the east end of Passaro Drive and King Street. Plaintiff also appeals the Commission's denial of its companion application for a development permit to allow excavation and filling of land on the proposed lots. CT Page 11357
The issue before the Court is whether the Commission acted illegally, arbitrarily or in abuse of its discretion when it denied the aforementioned applications. For the reasons which follow, this Court finds that the record does not support the Commission's decision. Accordingly, plaintiff's appeal is sustained. FACTS
The Return of Record (hereinafter "ROR") reflects the following facts:
The land in question, 4.85 acres of land located between Passaro Drive and King Street in East Hartford, is in a R-2 Residential zone. ROR #11, p. 7. In September, 1972, the property was approved for an eight lot subdivision but it was never built. Id. at p. 3. This approval was invalidated by the July 1972 Wetlands Regulations. Id. In 1985, plaintiff's application to build one house on the tract of land was denied by the Commission because "there was insufficient flood protection on the property." Id.
In 1991, plaintiff again sought to obtain Commission approval for the development of its land. This time, plaintiff proposed a two lot subdivision. On May 15, 1991, plaintiff's application for subdivision of the property was denied because it did "not encourage the most appropriate use of the land," was "not in the best interest of adjacent properties," would "not promote the health, safety, and welfare of the community," and was "not in the best interest of that community." ROR #1A, p. 4; #11, p. 12.
By application dated July 8, 1991, plaintiff once more applied to the Commission for approval to build the two single-family homes. On August 6, 1991, the Town Engineer conditionally approved the application, requesting revision of the plan to include ten items, four of which referred to the town Subdivision Regulations, although not to any specific regulation numbers. ROR #7, p. 1-2. The East Hartford Police, Fire, Health and Inspections and Permits Departments and Board of Education all approved both the subdivision application and plaintiff's application for development permit in a flood hazard zone. Id. at p. 3-9; ROR #11, p. 16.
A public hearing on plaintiff's applications was held on August 14, 1991. Plaintiff represented to the Commission that CT Page 11358 the revisions to the plan which had been requested by the Town Engineer had been made. ROR #11, p. 1-2. Moreover, the East Hartford Town Planner testified as follows:
 I would characterize this Application almost identical to the first Application which was submitted back in June that the Commission had before it. With the minor revisions of what the Engineering Department has recommended, it has met all the technical requirements as per the Subdivision Regulations. All the Town Staff members have reviewed this and found no problems with the plans.
Id. at p. 2.
At the public hearing, however, the testimony was primarily directed to the question of whether plaintiff's application would increase the flood hazard and water runoff onto adjacent properties. Plaintiff's civil engineer testified that the building of the proposed two homes would not increase any water problems for existing property owners. Id. at 26. The Town civil engineer agreed with plaintiff's engineer that this subdivision plan would not increase the flood hazard for neighboring properties. Specifically, the town engineer testified as follows:
 If I had concerns about that, that would have been listed in the comments that we prepared for review. I have stated before the Inland Wetlands Commission that it is our opinion that the plan that is before you this evening will not exacerbate any problems that are out there right now. As Mr. Sargeant has said, the benefits are almost immeasurable but they will not intensify any of the problems that exist today.
Id. at p. 15-16. See also, 27-28, 30-32. The East Hartford Inland Wetland Commission had previously conducted six hearings over a six month period to consider plaintiff's proposed construction in a wetland buffer area and concluded that it would present no negative impact on the area. Id. at 29. The Inland Wetland Commission approved the plan on February 28, 1991. ROR #1A, p. 6-7. CT Page 11359
At the regular session, Commission members repeated their concerns about creating water problems for abutting property owners. One member concluded that "granting this subdivision development will have a water runoff impact on the abutting properties." Id. at p. 48. Another member stated: "So, no one has said to me that this would improve in a measurable way the flooding of the neighbors that currently exist — flood of the neighbors' property that current (sic) exist." Id. at 48-49. And, yet another member added: "I'm very concerned about the runoff into this brook which is already — the brook is already impacting the neighborhood homes — and that being the case, I think we have an obligation to prevent something detrimental occurring to the existing properties and homes that are presently there." Id. at 49.
After discussion, the Commission voted unanimously to deny plaintiff's subdivision application and its application for a development permit in a flood hazard zone to allow excavation and filling of land. This timely appeal followed.
DISCUSSION
A. AGGRIEVEMENT
Section 8-8 of the Connecticut General Statutes allows any person aggrieved by a decision of any board, including a planning and zoning commission, to appeal to the Superior Court. C.G.S. 8-8(a)(1) and (b). The owner of the property which forms the subject matter of the application is an aggrieved party pursuant to Section 8-8. Bossert Corporation v. Norwalk,157 Conn. 279, 285, 253 A.2d 39 (1968). To establish aggrievement, testimony of ownership of the property at issue is sufficient and it is not necessary to introduce a deed at the trial of the case. Farr v. Zoning Board of Appeals, 139 Conn. 577,582-583, 95 A.2d 792 (1953).
At the hearing of the instant appeal, Mr. Richard S. Levin testified that he is President and Trustee of plaintiff, ARLEV Corporation. As such, he is the owner of the land which is the subject of the subdivision application denied by defendant Commission. Mr. Levin also testified that plaintiff is a Connecticut corporation in good standing and was so at all times relevant to this appeal. Accordingly, the Court finds plaintiff has sustained its burden of establishing aggrievement and may appeal the Commission's denial of its applications. CT Page 11360
B. THE CONTENTIONS OF THE PARTIES
The Commission's stated reasons for denying plaintiff's subdivision application were the following: (1) "It is not the most approved use of the land;" (2) "(sic) Will not promote health, safety and the general welfare of the nearby residents;" (3) "It is not in the best interest of the community;" and (4) "It is not a suitable building lot." ROR #10, p. 2; #11, p. 47. Additionally, the Commission denied plaintiff's application for a development permit in a flood hazard zone to allow excavation and filling of land because "It does not encourage the most approved use of the land," and "It is not in the best interest of the abutting properties." ROR #10, p. 2-3; #11, p. 50.
Plaintiff sets forth three reasons why its appeal should be sustained. First, it argues that the Commission illegally disregarded the mandates of Sections 8-26 and 22a-29 (3) of the Connecticut General Statutes which requires a planning and zoning commission to "give due consideration to the report of the inland wetlands agency." C.G.S. 8-26. Secondly, plaintiff contends that the Commission's decision denying its applications is not reasonably supported by the record. And, lastly, plaintiff alleges that since its applications satisfied all of the town subdivision regulations, the Commission, acting in its administrative capacity, was required to approve it.
Defendant, on the other hand, counters that it was not obligated to approve plaintiff's proposed subdivision because the plan did not in fact comply fully with the subdivision regulations. Moreover, according to defendant, the Commission is not bound by the conditional approval of the applications by the Inland Wetland Commission. Finally, defendant asserts that its denial of plaintiff's plan is, indeed, reasonably supported by the evidence of the record of this case and should be upheld.
In considering the parties contentions, it should be noted at the outset that a Planning and Zoning Commission derives its authority from Section 8-25 of the Connecticut General Statutes. Shailer v. Planning and Zoning Commission, 26 Conn. App. 17,27-28, 596 A.2d 1336 (1991). Moreover, when a Commission considers the approval or disapproval of a subdivision application it is acting in an administrative rather than in its legislative capacity. Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. 370, 374, 580 A.2d 91
CT Page 11361 (September 25, 1990), cert. denied, 216 Conn. 832, 583 A.2d 131
(November 29, 1990) [citing Reed v. Planning and Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213 (1988)]. When performing an administrative function, the Commission has limited discretion and must approve a subdivision application if it conforms to the town's existing subdivision regulations. Id.; R.K. Development Corporation v. City of Norwalk, 156 Conn. 369,377, 242 A.2d 781 (1968); Weatherly v. Town Planning and Zoning Commission, 23 Conn. App. 115, 119, 579 A.2d 94 (1990).
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82
(1979)." TLC Development, Inc. v. Planning and Zoning Commission, 215 Conn. 527, 532-533, 577 A.2d 288 (1990). While Beit Havurah and TLC Development, Inc. involved site plans, their conclusive presumption proposition applies to subdivision approvals as well. Sowin Associates v. Planning and Zoning Commission, 23 Conn. App. at 376.
In an appeal from the denial of a subdivision application, the issue before the trial court is whether any of the Commission's stated reasons for denial are supported by the express language of the Commission's regulations and whether the denial, based upon specific sections of the regulations, are reasonably supported by the evidence in the record. Weatherly v. Town Planning and Zoning Commission, 23 Conn. App. at 119; Sowin Associates v. Planning and Zoning Commission,23 Conn. App. at 376. Where the Commission fails to give reasons for its actions, or where its reasons are inadequate, the trial court must examine the record to determine whether a basis exists for the action taken. Shailer v. Planning and Zoning Commission,26 Conn. App. at 30-31. The trial court cannot substitute its judgment for that of the Commission. Town of Westport v. Town of Norwalk, 167 Conn. 151, 161, 355 A.2d 25 (1974); Weatherly v. Town Planning and Zoning Commission, 21 Conn. App. at 119.
In the instant case, the land in question is located in a R-2 residential zone and each lot size exceeds zoning requirement of the area. ROR #11, p. 7-9. Nevertheless, the Commission concluded that plaintiff's plan to build two single-family homes on the site was "not the most approved use CT Page 11362 of the land," would "not promote the health, safety and the general welfare of the nearby residents" and "is not in the best interest of the community." ROR #10, p. 2. However, the conclusive presumption set forth in TLC Development, Inc. v. Planning and Zoning Commission precludes the Commission from denying plaintiff's application because it adversely affects the district. It also prevents the Commission from denying plaintiff's application for a development permit in a flood hazard zone to allow excavation and filling of land because "it does not encourage the most approved use of the land," or because "it is not in the best interest of the abutting properties," as stated in the record.
Moreover, the above-noted reasons, as well as the fourth reason for denial of plaintiff's application, that "It is not a suitable building lot," are too general and vague to provide plaintiff with notice of its obligations in order to gain Commission approval. "Subdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases. Sonn v. Planning Commission, 23 Conn. App. at 376 (citations omitted).
In the present case, however, the Commission does not state anywhere in the record what specific regulations plaintiff has failed to meet with respect to both of its applications. If plaintiff's plans for the construction of two single-family homes and excavation and fill in an area zoned for residential use is not "the most approved use of the land," or "does not encourage the most approved use of the land," or "is not in the best interest of the abutting properties," there is no way for plaintiff to know how he can comply with the Commission's requirements in order for it to successfully develop its land. Similarly, if plaintiff's land is not "a suitable building lot," the Commission did not state what specific town regulations the plan violates so plaintiff could modify his plans to make them suitable. The Commission's stated reasons for denial of plaintiff's applications, therefore, are too vague and general and cannot support the Commission's decision to deny them.
Additionally, defendant's second and third reasons for denial of plaintiff's subdivision application, that plaintiff's proposed two single-family homes would "not promote the health, safety and the general welfare of the nearby residents," and that "it is not in the best interest of the community," cannot CT Page 11363 justify defendant's decision in the present case either. "General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit." Id. (citation omitted). Moreover, general objectives of subdivision regulations cannot support denial of a subdivision plan because these reasons are vague and "provide no information to the plaintiff to enable it to know wherein the plan submitted failed to satisfy the requirements of the regulations," RK Development Corp. v. Norwalk, 156 Conn. 369,377, 242 A.2d 781 (1968). Accord, TLC Development, Inc. v. Planning and Zoning Commission, 315 Conn. at 533.
Finally, the evidence in the record supports no other basis for denial of plaintiff's subdivision plans. Defendant's argument that it could deny plaintiff's subdivision application because the plan was not in full compliance with the town subdivision regulations, as evidenced by a letter dated June 11, 1991 from Wesley E. Sargent, plaintiff's civil engineer, attached to the application, wherein he requested waivers of ten sections of the regulations, is without merit. The letter in question listed ten specific subdivision regulations which plaintiff requested "waived." These regulations and the reasons for the waivers were explained as follows:
 4.6D.2 Surrounding areas are developed, therein, no drainage to off-site. Contours are shown on the key plan.
 4.6D.7 The site is served by a public sewer.
 5.41 The site is served by a public sewer.
 5.5A thru 5.5E and 5.5G thru 5.5I There is no proposed street construction.
 8.2C Waiver granted by Town ZBA on 5/30/91.
 8.2G The site is served by a public sewer.
8.3A thru 8.3O CT Page 11364 There is no proposed street construction.
 4A thru 8.4I The site is served by a public sewer.
 8.5L There is no proposed detention basin construction.
 8.6 Proposed lots are on existing streets.
ROR #11, P. 8.
At the hearing on the appeal, however, defendant conceded that only one of the above-listed regulations, Section 4.6.D.2 arguably applied to plaintiff's plan. Section 4.6.D.2 reads as follows:
 Existing topographic contours of the area to be subdivided to at least 2' intervals. Contours shall extend 200 feet beyond the subdivision boundary line. Existing contours may be obtained by use of current Metropolitan District Commission maps augmented by suitable field work in critical areas and/or as determined by the Town Engineer.
There simply is no mention at the public hearing or at the regular session that regulation 4.6.D.2 was of concern to the Commission. Yet, there is mention in the record relating to "contours" in Comment #10 by defendant's civil engineer attached to his administrative review, which stated "Revise contours on the area of prop. excavations." ROR #7, p. 2. And, plaintiff's engineer testified at the public hearing that drainage would be into a brook which runs through the middle of the site so there would be no grading or drainage off the site. ROR #11, p. 3. Furthermore, at the same hearing, the town planner testified that with the minor revisions recommended by the Engineering Department, plaintiff's application met all the subdivision regulation requirements. He clearly stated that "all the Town Staff members have viewed this and found no problems with the plans." ROR #11, p. 2. Had contours been a problem, it would have been mentioned at the hearing or otherwise in the record.
Moreover, defendant's reliance on Section 8-26 of the Connecticut General Statutes concerning waivers of subdivision CT Page 11365 regulations is misplaced. The relevant part of that section reads as follows:
 Such regulations may contain provisions whereby the commission may waive certain requirements under the regulations by a three-quarters vote of all the members of the commission in cases where conditions exist which affect the subject land and are not generally applicable to other land in the area, provided that the regulations shall specify the conditions under which a waiver may be considered and shall provide that no waiver shall be granted that would have significant adverse effect on adjacent property or on public health and safety. The commission shall state upon its records the reasons for which a waiver is granted in each case.
The operative language of the statute with respect to the instant matter is "in cases where conditions exist which affect the subject land and are not generally applicable to other land in the area." None of the regulations referred to by plaintiff in its June 11, 1991 letter concern existing conditions which affect its land and are not applicable to other land in the area. As previously noted, section 4.6.D.2 concerning existing site conditions and topographic contours does not apply because the proposed two homes would result in no drainage to off-site. See, ROR #11, p. 3. Section 8.2C, concerning minimum frontage and minimum area requirements does not apply because on May 30, 1991, the East Hartford Zoning Board of Appeals granted a 50 foot lot width variance for one of the lots. ROR #1A, p. 5; #11, p. 3.
Additionally, Section 4.6.D.7 concerning seepage tests and data, Section 5.4I concerning sanitary waste disposal systems, Section 8.2G concerning subdivisions not yet to be by public sewers and/or public water supply, and Section 8.4A thru 8.4I concerning sanitary waste disposal do not apply to plaintiff's land because the proposed two homes would be served by a public sewer. Plaintiff's engineer testified that the houses would be served by MDC water and sewer. Id. Section 5.5A thru 5.5E and 5.5G thru 5.5I concerning public improvements and utilities plan and profiles, Section 8.3A thru 8.3O concerning streets, and Section 8.6 concerning street signs do not apply to plaintiff's subdivision plan because it included no proposed street construction and the lots are on existing streets. Finally, Section 8.5L, concerning detention basins, CT Page 11366 does not apply to plaintiff's application because it proposed no detention basin construction. Plaintiff cannot comply with these regulations because they do not apply to its land. Therefore they need not be "waived" pursuant to Section 8-26.
It is imminently clear from the record of this case, that the defendant Commission denied plaintiff's applications because it was concerned with possible flooding of neighboring properties, including a 100 year flood cycle. A brook meanders through the land in question.
The proposed two single-family homes are to be built in the wetland buffer area. At the request of the Inland Wetlands Commission, plaintiff made several modifications to its plans. It increased the excavation area to give 1 1/2 to 1 compensation and moved the excavation area from the west side of the site to between the houses, thereby increasing the flood storage on the site. The Inland Wetlands Commission finally approved plaintiff's plans on February 28, 1991, after six hearings.
Plaintiff's claim that defendant Commission violated Sections 8-26 and 22a-29 (3) of the Connecticut General Statutes by not following the town Inland Wetlands Commission's approval of its application is without merit. Defendant is correct that a Planning and Zoning Commission is not required to approve a subdivision application merely because the application had been approved by the Inland Wetlands Commission. This issue was recently considered in Arway v. Bloom, 29 Conn. App. 469,615 A.2d 1075 (1992). There the court interpreted. inter alia, the phrase "due consideration" as it pertains to the requirement of Sections 8-3(g), pertaining to site plan applications, and Section 8-3c(b), concerning special permit applications. The court in Arway stated as follows:
 The zoning commission must give the wetlands commission report due consideration. We do not read this as a statutory mandate that the zoning commission's decision be based on the wetlands report. To afford due consideration is to "give such weight or significance to a particular factor as under the circumstances it seems to merit, and this involves discretion." Black's Law Dictionary (5th Ed.). It entails "giving such thought or weight to a fact as it merits under all the circumstances of the case." Ballentine's Law Dictionary CT Page 11367 (3d Ed.). There is no question that the term due consideration requires the zoning commission to do more than simply receive the wetlands report and give it passing notice. The weight or significance to be accorded that report by the zoning commission depends, however, on the application before it; how much weight the report should be given is a matter of discretion for the commission.
Id. at 479-480.
Since Section 8-26 contains a similar "due consideration" requirement as Sections 8-3(g) and 8-3c(b), there is no reason to believe that the foregoing proposition of Arway would not apply to the present case. However, there is nothing in the record which reflects that the Commission failed to give "due consideration to the Inland Wetlands Commission report." Plaintiff's protestations to the contrary notwithstanding, this court cannot find that the defendant Commission violated the mandates of Section 8-26 in this respect.
While the Commission may have complied with Section 8-26 by giving due consideration to the approval of plaintiff's application by the town's Inland Wetlands Commission, it obviously disagreed with the latter's conclusion regarding any potential negative impact of drainage and flooding into neighboring properties. Not only did the defendant Commission reject the Inland Wetlands Commission's findings, it disregarded all expert testimony regarding this issue as well.
Plaintiff's civil engineer testified at the public hearing that it was his professional opinion that plaintiff's plan of excavating 1 1/2 yards for every one yard of fill around the houses as presently located on the site would not change the present flood elevation, would increase the flood storage on the site and there would be actually less risk of flooding, albeit minor, with plaintiff's plan than without it. The plan would increase the basin that will catch water so it will not spill out onto neighboring land. ROR #11, p. 4-6. Plaintiff's civil engineer also stated that, in his opinion, there would be less standing water on the excavated area than there exists there presently. Id. at p. 10.
The town's own civil engineer's professional opinion concerning increased flood hazard to surrounding properties CT Page 11368 concurred with the opinion of plaintiff's civil engineer. In this respect, the town engineer unequivocally opined that if he had been concerned about flooding to abutting properties, he would have listed it in the comments that he had prepared for review. The town engineer also added that he agreed with plaintiff's engineer that plaintiff's plan would have an immeasurable positive benefit in a 100-year flood, although he stated that "on a 100-year flood, this entire area will flood." Id. at 28. According to the town engineer, in a 100-year flood, "the water will not change from an existing condition." Id. He added as follows:
 If a flood were to occur tomorrow, this plan would basically — you would still see the same exact conditions. They would not be any worse than they are today. And, again, it's an immeasurable benefit but it is in a positive direction.
Id.
Unpersuaded by all expert testimony to the contrary, defendant Commission relied on its own opinion that plaintiff's plan might cause water runoff and flooding problems for abutting properties. One commission member even seemed to suggest that plaintiff had an obligation to "improve in a measurable way the flooding of neighbors that currently exist." Id. at p. 48-49. The court finds, however, that the Commission members' concerns about flooding to neighboring properties is speculative and unsupported by any evidence in the record.
The question then arises, therefore, whether the Commission could properly disregard all expert testimony about the flooding issue and rely upon the personal observations and knowledge of individual Commission members to support its denial of plaintiff's applications. While it is true that in determining whether or not an application complies with subdivision regulations, planning and zoning commission members may consider facts which they learn by personal observation of the property in question and the surrounding area, they may do so only regarding matters which are readily within their competence, such as traffic congestion, street safety and local property values. Feinson v. Conservation Commission, 180 Conn. 421,427-428, 429 A.2d 910 (1980). Where lay commission members rely on their own knowledge and experience concerning technically CT Page 11369 complex issues, in disregard of contrary expert testimony, they act arbitrarily and without substantial evidence, and their decision cannot be sustained. Id., at 429.
In the present case, none of the commissioners was an engineer. Moreover, none of the commissioners who expressed a contrary opinion to that of the experts stated any educational or professional background which would support their opinions about the drainage of water which would result from plaintiff's plans. Rather, their opinions were speculative and beyond the scope of their knowledge. Drainage matters are too technically complex to allow lay commission members to disregard contrary expert testimony. Otherwise, subdivision applications would not need to be reviewed by town engineering departments which are experts in the field and which rely on experience and professional training, requiring years of technical education and licensing by the State. Accordingly, in the instant case, this court finds that in rejecting contrary expert testimony in a technically complex area of drainage and possible attendant flooding problems affecting adjacent property owners, the Commission acted without substantial evidence and arbitrarily. Accordingly, its decision rejecting plaintiff's applications cannot be sustained.
CONCLUSION
For all the foregoing reasons, the Court finds that the defendant Commission's denial of plaintiff's applications was arbitrary, an abuse of discretion, unsupported by the evidence of the case, and, therefore, contrary to law. Accordingly, plaintiff's appeal is sustained. The defendant Commission is directed to approve plaintiff's application for subdivision and its companion application for a development permit to allow excavation and filling of land.
SO ORDERED.
Dated this 21st day of December, 1992.
BY THE COURT
Carmen E. Espinosa, J. CT Page 11370