## CHRISTINE ARWAY ET AL. *v.* WALTER S. BLOOM ET AL.
## (11057)

FOTI, HEIMAN and CRETELLA, Js.

Argued September 25—decision released November 10, 1992

*Neil R. Marcus,* with whom, on the brief, was *Mary H. Casen,* for the appellants (named defendant et al.).

*Jan A. Marcus,* for the appellees (plaintiffs).

Foti, J. The defendants appeal from the decision of the trial court sustaining the plaintiffs' appeal from the approval of a site plan and special permit application by the zoning commission of the town of Redding.

The following facts are relevant to this appeal. The defendants, Richard and Walter S. Bloom (applicants), are the contract purchasers of 35.77 acres of land located on Starrs Ridge Road in the town of Redding.[1] The defendant zoning commission is that town's duly authorized zoning authority. The plaintiffs, all of whom are Redding residents, own land in proximity to the subject property.[2] On March 21, 1990, the applicants applied to the zoning commission for site plan approval and a special permit for the construction and operation of a summer day camp on the property. The property lies within an R-2 residential zone, which pursuant to § 4.2 of the zoning regulations of the town of Redding, is intended to "provide a rural residential environment." A day camp is an allowable use with a special permit under § 4.2.3 of the regulations.[3] At the same time they applied for zoning approval, the applicants also applied for a wetlands permit from the Redding conservation commission (wetlands commission), because the property contains extensive wetlands.

Between May 23 and August 22, 1990, the zoning commission held a series of public hearings on the appli-

---

[1] The owner of the property, Casa-Torch, Inc., is not a party to this appeal.

[2] The trial court determined that these plaintiffs are all properly aggrieved parties, and there has been no challenge to this determination.

[3] "§ 4.2.3 - Permitted Special Uses

"Subject to a Special Permit granted by the Commission, in accordance with Section 5.1, the following uses may be authorized:

\* \* \*

"(m) Recreational camps, arboretums, and conservation training centers, in which the natural character of the land is substantially preserved, provided located on a site of at least twenty-five (25) acres."

cation. During the course of the hearings, many members of the public, including the plaintiffs herein, spoke at length in opposition to the application, voicing concerns primarily about traffic and safety. The public hearing was closed on August 22, 1990, and the zoning commission approved the application on September 12, 1990, subject to two restrictions. The first restriction was a verbatim adoption of a condition attached to the August 21, 1990, approval that the applicants had obtained from the wetlands commission.[4] The second restriction related to the applicants' obligation to make certain improvements to the intersection of Starrs Ridge Road and Picketts Ridge Road.[5]

The plaintiffs thereafter filed an appeal in Superior Court against the applicants and the zoning commission. Their ten point attack on the zoning approval alleged, inter alia, that the commission's decision was against the weight of the evidence and that the approval was arbitrary, illegal, and an abuse of discretion. The plaintiffs' primary concern was with the traffic congestion that they believed the proposed day camp would generate.

These same plaintiffs had already filed an appeal from the decision of the wetlands commission, which had approved the developers' application for a wetlands permit subject to numerous conditions. In that appeal, the plaintiffs alleged thirteen ways in which the wetlands commission decision was arbitrary, illegal, and an abuse of discretion.

---

[4] The first condition stated: "(1) Limits of Use as specified in Item – 24, Line –1, of the Conservation Commission's Conditions of Approval, which reads, 'That limits of use of the property are hereby defined as one single family residence, year round, and one summer day camp to serve no more than 300 people (including staff) five days per week for no more than eight weeks per year, from the hours of 9:00 a.m. to 4:00 p.m. daily during those eight weeks.' "

[5] The second condition stated: "(2) That the applicant be required to bear reasonable expense to improve the intersection of Starrs Ridge Road and Picketts Ridge Road, as determined by the Board of Selectmen and the Town Highway Department."

The wetlands appeal and the zoning appeal were heard together in the trial court, and the decisions were released on the same day. With respect to the wetlands appeal, the trial court held that the wetlands commission had, in fact, acted illegally by not closing the public hearing within the statutorily mandated time period. The trial court sustained that appeal and remanded the matter to the wetlands commission for a new hearing. That decision is not before us.

The trial court's decision on the wetlands appeal formed the basis of its decision on the zoning appeal. The court found that under § 3.1 of the Redding inland wetlands and watercourses regulations, regulated activities affecting wetlands and watercourses are prohibited unless approved by the wetlands commission. The court reasoned that because it had nullified the decision of the wetlands commission, the zoning commission decision "which [was] based upon said nullified decision, must also fall." The trial court sustained the plaintiffs' zoning appeal on that procedural ground alone, without ever reaching the substantive issues raised in the appeal.

The sole issue before us is whether the trial court improperly found that General Statutes §§ 8-3 (g) and 8-3c (b) require the decision of a zoning commission to be set aside when a decision of the wetlands commission affecting the same property is appealed and judicially determined to have been illegal.

Section 8-3 (g), which pertains to site plan applications, and § 8-3c (b), which pertains to special permit applications, provide that a zoning "commission shall not render a decision on the [zoning] application until the inland wetlands agency has submitted *a report with its final decision* to such [zoning] commission. In making its decision the zoning commission shall give *due*

*consideration to the report* of the inland wetlands agency." (Emphasis added.) General Statutes § 8-3c (b); see General Statutes § 8-3 (g).

The trial court apparently reasoned that because the decision of the wetlands commission was determined on appeal to have been invalid, it could not, in retrospect, have been a final decision. The trial court found, in effect, that the term final decision means a decision that has withstood judicial scrutiny on appeal. The applicants, on the other hand, argue that the August 21, 1990 report of the wetlands commission was its final decision for purposes of General Statutes §§ 8-3 (g) and 8-3c (b), and the zoning commission gave that report its due consideration. While the trial courts have had some occasion to interpret these statutes, neither this court nor our Supreme Court has construed them. This is thus a case of first impression and requires us to determine what the legislature meant by its use of the terms final decision and due consideration.

In construing these statutes, our goal is "to ascertain and give effect to the apparent intent of the legislature." *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). We look first to the plain, unambiguous language of the statute. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). Only if the language is ambiguous do we turn "for guidance to the legislative history and the purpose the statute is intended to serve." *State* v. *Koslowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); see also *Beizer* v. *Goepfert,* 28 Conn. App. 693, 698, 613 A.2d 1336 (1992).

The terms final decision and due consideration are ambiguous, and we have looked to the legislative history of General Statutes §§ 8-3 (g) and 8-3c (b) to assist us in ascertaining their meaning. We find nothing to indicate that the term final decision means something other than the final decision contained in the report

the zoning commission received from the wetlands commission, which report the zoning commission had in hand at the time it rendered its decision. Nor do we find that the term due consideration requires that the zoning commission's decision be based on the report of the wetlands commission.

No. 87-533 of the 1987 Public Acts, which added the final decision language to the zoning statutes, was denominated "An Act Concerning the Inland Wetlands and Watercourses." The goal of the act was to strengthen the inland wetlands law. 30 H.R. Proc., Pt. 28, 1987 Sess., p. 10227. One way it accomplished this was by "establish[ing] a coordinated timetable for planning and zoning and inland wetland decisions." Id., p. 10228. Representative Thomas S. Luby, who summarized the bill containing the final decision language, stated, "My understanding is that it is important that an applicant under this Bill not, for example, fill in any wetland as a result of obtaining a [wetlands] permit prior to obtain[ing] the approval of the other land use commissions. That also requires within a certain [amount] of time, that an application be filed with the Wetlands Commission and it delays the action . . . of the other commissions until there is action by the Wetland Commission." 30 H.R. Proc., Pt. 30, 1987 Sess., pp. 11043–44.

Public Act No. 87-533 also added language to General Statutes § 22a-42a (d) to the effect that "[n]o person shall conduct any regulated activity within an inland wetland or watercourse which requires zoning or subdivision approval without first having obtained a valid certificate of zoning or subdivision approval, special permit, special exception or variance or other documentation establishing that the proposal complies with the zoning or subdivision requirements adopted by the municipality pursuant to chapter 124 to 126, inclusive, or any special act."

The coordinated approval process would require an applicant to file wetlands and zoning applications simultaneously.[6] In fact, Public Act No. 87-533 amended the language of General Statutes (Rev. to 1985) § 8-3 (g) to require that, if a site plan application involves a regulated activity, "the applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day such application is filed with the zoning commission."

The history of Public Acts 1987, No. 87-533 indicates that the legislature's main concern at the time was simply to coordinate the approval processes of the zoning and wetlands commissions, so that a developer would not proceed with activities affecting an inland wetland before obtaining all necessary permits. The act strengthened the existing protections afforded by the wetlands law, which has, since its enactment in 1972, specified that "no regulated activity shall be conducted upon any inland wetland and watercourse without a [wetlands] permit." General Statutes § 22a-42a (c). There is no indication that the legislature was attempting to make the zoning commission either a rubber stamp or a review board for the wetlands commission, or to alter in any way either commission's respective jurisdiction or the statutory time limits for rendering each decision.

Because the legislative history of Public Act No. 87-533 does not specifically address the terms final decision and due consideration, we must look elsewhere

---

[6] "Rep. Krawiecki: Through you, Mr. Speaker. Representative Luby . . . where does an applicant begin his process. And I don't think that this bill requires you to commence your application process through Inland Wetlands. . . .

"Rep. Luby: My understanding . . . is it would be a simultaneous process.

"Rep. Krawiecki: Thank you, Mr. Speaker. That would be my understanding as well." 30 H.R. Proc., Pt. 30, 1987 Sess., p. 11046.

to determine what these terms were intended to mean in the context of the new coordinated wetlands and zoning approval processes. Our Supreme Court has said that in construing a statute, we may "consider that where the legislature uses the same phrase it intends the same meaning." *Link* v. *Shelton,* 186 Conn. 623, 627, 443 A.2d 902 (1982). The same final decision and due consideration language that was incorporated in the zoning statutes in 1987 has been used in our planning statutes since 1977, and we look there for guidance in interpreting these terms.

General Statutes § 8-26 provides in part that if an application for subdivision or resubdivision "involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The [planning] commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such [planning] commission. In making its decision the [planning] commission shall give due consideration to the report of the inland wetlands agency." This final decision and due consideration language in § 8-26 was added by No. 77-545 of the 1977 Public Acts. The history of that act indicates the language was, according to Representative Janet Polinsky, "designed to keep a developer from . . . dangling in the winds between a wetlands agency and a planning commission. If the proposed subdivision site is located on land regulated under the inland wetlands statutes, the applicant would file a copy of his application with the agency enforcing the inland wetlands and watercourse regulations within ten days of filing with the planning commission unless the wetland agency had already reviewed this application. This way the appli-

cant would not, as some have, go all through the subdivision procedure, get his approval and then find he could not get a building permit because he failed to get approval from the wetlands agency." 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2411–12.

Representative David K. Dodes specifically asked for clarification of the term due consideration: "What does 'due consideration' mean considering there is nothing in here that would say anything in regard to a mandatory requirement to accept the report from the other agency either to pass or disapprove a subdivision." Id., p. 2414. Representative Polinsky then explained that "the inland wetlands statutes take care of themselves. What we are saying in effect here is that the planning commission, assuming the wetlands commission sent a report that said, hey man, there's a lot of wetlands in there and we want to have a permit procedure and it's going to take some time. The planning commission might, in making its decision, either hold up its decision, if that were possible within the relevance of a time period or might decide that they would have to deny until such time as a permit were given by the wetlands agency. But I don't think we wanted to tie the wetlands statutes so tightly to the subdivision statutes that you were almost making them into one decision-making body." Id., pp. 2414–15. Representative Dodes, who favored a "development commission . . . whereby all activities dealing with land use, planning, zoning, inland wetlands, conservation, economic development would be handled by one commission so that the right hand knows what the left hand is doing"; id., p. 2417; later expressed his disappointment that the bill did not require even greater coordination between the planning and wetlands commissions. "My second concern is the one in which the planning commission has got to give 'due consideration' to the report of the inland wetlands commission. I agree that right at this moment

there is no mechanism by which planning commissions and inland wetlands commissions are in any way, shape or form required to contact each other or interact with each other. This [bill] is a step in the right direction although I do not think it goes far enough." Id., p. 2416.

The legislative history of Public Act No. 77-545 thus indicates that while the planning commission was expected to review a report of the wetlands commission prior to making its own decision, each agency was expected to make its own independent decision on the application before it, within the appropriate time limits allowed by statute. While the planning agency "might . . . either hold up its decision . . . or might decide that they would have to deny [the application]"; 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2414–15; on the basis of the wetlands report, the two decisions were not expected to be so tightly tied together that they were, in effect, made by one decision making body. There is nothing to indicate that the validity of the planning commission's decision was intended to be contingent upon the ultimate validity of the wetlands decision. See T. J. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), p. 5.

In *Ventres* v. *Inland Wetlands & Watercourses Agency,* 25 Conn. App. 572, 575, 595 A.2d 914, cert. denied, 220 Conn. 921, 597 A.2d 344 (1991), we adopted this interpretation of the final decision language in General Statutes § 8-26. The plaintiff in *Ventres* had claimed that the local planning commission had improperly denied approval of his subdivision application, because it had never received a final decision from the wetlands agency. The gist of the plaintiff's claim was that the wetlands agency's decision could not be considered final as long as it was being appealed. We agreed with the trial court that "the wetlands agency's final decision was contained in the report that the [planning] commission received and therefore satisfied the statute." Id. Our careful review of the legislative his-

tory of Public Act No. 87-533 supports our adoption of this same interpretation of the zoning provisions in General Statutes §§ 8-3 (g) and 8-3c (b).

While Public Act No. 87-533 was intended to coordinate the roles of the zoning and wetlands commissions, it was not intended to make those decisions interdependent. When the zoning commission receives a copy of the "report" prepared by the wetlands commission, it is not required to review (or await judicial review of) the validity or invalidity of that commission's final decision as a precursor to rendering its own decision. This construction of the term final decision is consistent with the function that the wetlands report was intended to serve. *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 487–89, 547 A.2d 528 (1988); *Preisner* v. *Aetna Casualty & Surety Co.,* 203 Conn. 407, 413–14, 525 A.2d 83 (1987). The final decision contained in the wetlands report is merely one of the many factors the zoning commission must consider in rendering its own decision, within its own relevant time limits.[7] If the wetlands decision is later challenged (as was the wetlands decision here), this does not, retrospectively, deprive the zoning commission of jurisdiction to act on the application before it.

The zoning commission must give the wetlands commission report due consideration. We do not read this as a statutory mandate that the zoning commission's decision be based on the wetlands report. To afford due consideration is to "give such weight or significance to a particular factor as under the circumstances it

---

[7] The zoning laws contain very specific time limits within which a zoning commission must render a decision. See General Statutes § 8-7d. There is nothing in the language or history of General Statutes §§ 8-3 (g) or 8-3c (b) to indicate that the action of a zoning commission would be stayed pending the outcome of a wetlands appeal. We may not read into these statutes provisions that do not exist. *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 195, 567 A.2d 1156 (1989).

seems to merit, and this involves discretion." Black's Law Dictionary (5th Ed.). It entails "giving such thought or weight to a fact as it merits under all the circumstances of the case." Ballentine's Law Dictionary (3d Ed.). There is no question that the term due consideration requires the zoning commission to do more than simply receive the wetlands report and give it passing notice. The weight or significance to be accorded that report by the zoning commission depends, however, on the application before it; how much weight the report should be given is a matter of discretion for the commission.

Here, the zoning commission acted on the applicants' site plan and special permit application with a favorable final report from the wetlands commission in hand. The fact that the wetlands decision was later reversed by the trial court on procedural grounds did nothing to disturb the zoning commission's jurisdiction to render its own decision at the time it considered the wetlands report. Nor is there any question in this case that the Redding zoning commission gave the final report of the wetlands commission its due consideration. Whatever else due consideration of a wetlands report entails, it surely includes this zoning commission's verbatim adoption of one of the wetlands commission's own conditions of approval.[8] We therefore conclude that the zoning commission gave due consideration to the final decision of the wetlands commission contained in its August 21, 1990 report, and thereby satisfied the requirements of General Statutes §§ 8-3 (g) and 8-3c (b). The zoning commission's jurisdiction to render this decision was unaffected by the plaintiff's subsequent

---

[8] At the same time, we disagree with the trial court's conclusion that the wetlands decision was the basis of the zoning commission's decision. The zoning commission did, after all, adopt a second condition of approval involving road improvements that had nothing to do with the wetlands commission's report.

successful attack on the wetlands decision.[9] Nor does the fact that the applicants reapplied to the wetlands commission and obtained a different decision change the fact that at the time the zoning commission rendered its decision, it had in hand a final decision of the wetlands commission to which it gave due consideration.

Any other approach would deprive the zoning commission of the authority to render its own final decision until all appeals of the wetlands commission's decision have been exhausted. A reversal or invalidation of the wetlands commission's decision would then require the applicant to reapply for both zoning and wetlands approval, and run the risk and concomitant expense of invalidation all over again. We do not believe the legislature intended to create such a costly and potentially endless application process.

Our interpretation of General Statutes §§ 8-3 (g) and 8-3c (b) does not diminish protection to the wetlands. General Statutes § 22a-42a (c) provides that "[n]o regulated activity shall be conducted upon any inland wetland and watercourse without a [wetlands] permit." Thus, even a favorable decision from the zoning commission will not enable the applicants to proceed with development unless they are successful in obtaining a wetlands permit. As Representative Polinsky succinctly put it, "the inland wetlands statutes take care of themselves." 20 H.R. Proc., Pt. 6, 1977 Sess., p. 2414.

The trial court did not consider the substantive issues raised in the plaintiffs' appeal in view of its finding that

---

[9] The plaintiffs make much of the fact that the applicants obtained only a narrow approval by the zoning commission. The zoning laws make no distinction between a narrow approval and a unanimous one. There is no need to speculate on what the vote on the application would be now, because we conclude that the zoning approval rendered on September 12, 1990, was valid and unaffected by the subsequent invalidity of the wetlands decision.

the procedural defect in the wetlands decision also rendered the zoning commission's decision null and void. The defendants have suggested that the trial court had those issues properly before it at the time it rendered its decision and therefore there is no need to remand for further consideration. We do not agree.

The plaintiffs did not waive any of their remaining claims, nor did the trial court consider and reject them. The trial court simply found that the procedural defect in the wetlands decision was dispositive of the appeal; it did not reach the substantive issues. Under these circumstances, the proper remedy is to remand the case to the trial court for consideration of the remaining issues. *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 102 A.2d 875 (1954).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.