[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiffs brought in six counts, CT Page 15576 seeking a declaratory judgment that the defendant, Frank Zacchera's (Zacchera), inland wetlands and amended site plan approvals are void, and for injunctive relief against a claimed nuisance and unreasonable pollution and destruction of the wetlands and public trust in natural resources. For the reasons that follow, the court finds Zacchera's wetlands permit invalid, and denies the plaintiffs' other claims.
I. FACTUAL AND PROCEDURAL HISTORY
Most of the material facts in this case are undisputed. The plaintiffs Pamela Sorrow, Jerry Sorrow, Kathleen Vakiener and Bruce Vakiener (collectively plaintiffs) own and reside on properties in Canton which abut the westerly border of land (the property) owned by Zacchera comprising approximately six (6) acres. The property is located entirely within a "buffer area"[1], which is contiguous on its easterly border with a 24.5 acre parcel also owned by Zacchera which contains wetlands and watercourses.
Zacchera applied to the defendant Inland Wetland and Watercourses Agency of the town of Canton (wetlands agency) for permission to conduct a regulated activity[2], for the purpose of installing a parking and storage area for his construction equipment and portable toilet rental business. The construction basically involved cutting trees, grading a portion of the property, surfacing it with gravel, and paving a small portion.
Zacchera also simultaneously applied to the defendant Canton Zoning Commission (zoning commission) for approval of an amended site plan.
The subject property is located within a light industrial zone, and is in close proximity to several other business operations, including automobile, truck, and heavy equipment repair shops. The approvals sought were granted by the respective commissions[3] and a notice of each approval was duly published in the Valley News, a local weekly newspaper, within the time required by law.
The plaintiffs, whose properties are in a residential zone, did not appeal either approval. They claim that they did not receive the written notice required by the wetlands regulations. They also claim that the notices of the commissions' approvals published in the Valley News is inadequate, as it is not a CT Page 15577 newspaper of general circulation in the town of Canton as required by General Statutes § 8-3 (g)[4] and § 11.3[5] of the wetlands regulations, thereby depriving the defendant commissions of subject matter jurisdiction. They also claim that the sign posting by Zacchera was not in accord with the zoning regulations. The plaintiffs therefore assert that for any one, or all of these procedural deficiencies, the actions of the defendant commissions were of no effect and void.
The plaintiffs further claim that Zacchera's actions would unreasonably pollute, impair or destroy the air, water and other natural resources of the state, and they seek relief under General Statutes § 22a-16, and finally claim that Zacchera's cutting of trees, brush and undergrowth, grading, graveling, and the storage of equipment and portable toilets on the property cause unreasonable noise and create a nuisance.
At a hearing on the plaintiffs' request for a temporary injunction, the parties entered into an agreement involving discovery and the closing of pleadings, so that a single hearing could be held on all of the plaintiffs' claims, including their claim for permanent relief. Also, notice of the plaintiffs' declaratory judgment claim was ordered pursuant to Practice Book § 17-55(4) to the Valley News and the five adjoining towns who customarily place legal notices therein. The parties further agreed that Zacchera could grade and gravel a portion of the property and store equipment and toilets thereon in the interim.
The defendants filed an answer denying the material allegations of the plaintiffs' complaint, and the court held a hearing in which testimony and numerous documents were introduced. The parties also filed posttrial briefs.
II. CLAIM THAT THE VALLEY NEWS IS NOT A NEWSPAPER OF GENERAL CIRCULATION
A review of the case law in Connecticut reveals that no court has defined a "newspaper of general circulation," or provided an analysis supporting a finding that a particular newspaper was a "newspaper of general circulation[6]." In one case the Supreme Court stated that the "Norwich Bulletin is a newspaper of general circulation in the municipality of Sterling." Concerned Citizensof Sterling, Inc. v. Connecticut Siting Council, 215 Conn. 474, 476, 576 A.2d 510 (1990). CT Page 15578
A number of Superior Court cases have described various newspapers as being of or having a "general circulation" at least in particular towns. See Dow v. New Haven Independent,41 Conn. Sup. 31, 32-33, 549 A.2d 683
(1987) (New Haven Independent and New Haven Register
are newspapers with general circulations); Northeast FinancialManagement v. Record General Publishing, Superior Court, judicial district of New Haven, Docket No. 0381563 (March 16, 1998) (Pittman,J.) (Meriden Record Journal "a newspaper of general circulation in Meriden and surrounding towns."); Mercer v. Warden,
Superior Court, judicial district of Tolland at Rockville, Docket No. 650 (July 22, 1997) (Bishop, J.) (Stamford Advocate is newspaper of general circulation in lower Fairfield County); Phillipsv. Darien Zoning Board of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0146847 (May 12, 1997) (Stevens,J.) (Darien News Review is newspaper of general circulation);Dzubak v. Zoning Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 0128718 (November 23, 1993) (Dean, J.) (The Hour is newspaper of general circulation in Norwalk); and Weinberg v. Pollock, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 027773, 4 CONN. L. RPTR. 628 (June 19, 1991) (Fuller, J.) (Evening sentinel is daily newspaper of general circulation published in Ansonia).
In the absence of applicable Connecticut law, the court looks to the law of other jurisdictions. Confronting the issue for the first time, the Supreme Court of Wisconsin stated," [t]he precise question of exactly what is meant by `general circulation' has not yet been resolved in this state. Decisions in other jurisdictions indicate, however, that whether or not general circulation exists hinges not upon the number of people who receive the newspaper, but rather upon whether the news coverage is directed to the interests of a particular class of people. A paper containing general news which is available to the public at large is ordinarily considered to be one of general circulation." (emphasis in original) Joint School District Number 1 v. JointCounty School Commission, 26 Wis.2d 580, 133 N.W.2d 317, 320
(1965). The Supreme Court of Iowa stated that for a newspaper to qualify it must meet the following requirements: "First, that a newspaper of general circulation is not determining by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of CT Page 15579 `general circulation.'" Burak v. Ditson, 209 Iowa 926, 930,229 N.W. 227, 228 (1930). See also Great Southern Media, Inc. v.McDowell County, 304 N.C. 427, 284 S.E.2d 457, 462 (1981) (determining that "general circulation" refers more to the content of paper the than to "numerical or geographic distribution of the newspaper," and explaining that when it is primarily directed to a particular group or locality, a newspaper of general circulation must contain "some items of interest to persons who do not live in that locality or who are not members of that group."), and Moore v. State, 553 P.2d 8, 21 (Alaska 1976) ("The proper construction of the term `general circulation' requires consideration of both the qualitative and quantitative aspects of the publication. A newspaper which contains news of general interest to the community and reaches a diverse readership is one of general circulation."). If a newspaper contains news of general interest and has a diverse readership, only the lack of readers in a particular area will defeat its status as a newspaper of general circulation. See Moore v. State,
supra, 553 P.2d 21. In Moore the court found that a circulation of 130 newspapers among 3,500 residents was sufficient to find general circulation. Id., 21-22. See also cases annotated in 24 A.L.R. 4th 822 (1981) ("what constitutes a newspaper of general circulation within the meaning of state statutes requiring publication of official notices and the like in such newspaper"); see also 68 A.L.R. 542 (1928).
The Valley News and its predecessors have, for more than ten years, published a weekly newspaper in the six towns[7] in the Farmington Valley, whose land use regulation boards have used it for legal notices during that time. Two issues published January 22 and 29, 1998 were introduced into evidence. The paper contains local news, sports, records of real estate transactions and arrests, educational news, birth, death and wedding announcements, movie and theater reviews, local and state politics, budget news, local public interest stories, food and restaurant stories, letters to the editor, editorial opinions and commentary on matters of statewide concern, descriptions and calendars of social events, meeting schedules of local boards, agencies and committees too numerous to mention, and information about a myriad of items of local interest.
During the relevant time periods the Valley News had a total of 147 sales and subscriptions in Canton out of a total weekly circulation in the six towns of 2,856, in the aggregate. Canton has 3,444 households with a population of 8,453[8], and there CT Page 15580 are approximately 3 readers per copy in circulation. It is clear that the Valley News' circulation, while not substantial, is not de minimus.
I conclude that, after consideration of these factors, measured by the standards in the cases cited, despite the plaintiffs' claim to the contrary, the Valley News is a newspaper of general circulation in the town of Canton. Therefore, publication of the commissions' decisions in the Valley News
complied with General Statutes § 8-3(g) and § 11.4 of the wetlands regulations. This claim of the plaintiffs therefore fails.
III. WHETHER ZACCHERA FAILED TO POST A SIGN VISIBLE FROM A PUBLIC STREET IN VIOLATION OF THE ZONING REGULATIONS
The plaintiffs, who are abutting landowners, claim that Zacchera failed to comply with the Canton zoning regulations by improper posting of a sign giving notice of his site plan application. "In any matter pending before the Zoning Commission involving a special exception or a public hearing, the zoning enforcement officer shall make [available] a suitable sign for the applicant to post on the property to be affected by the application in a conspicuous place visible from the public street. Before any action on said special exception or public hearing, the applicant shall file an affidavit with the commission that said sign had been posted continuously for a period of seven (7) days prior to the hearing." Canton Zoning Regs., § 72.10.
Zacchera caused a sign to be posted on the property, at Colonial Road, a private street, not accepted by the town of Canton. The sign was furnished to him by the town and was the size customarily used by the town for notice of public hearings on land use applications. Zacchera's attorney filed an affidavit certifying that the sign was posted in accord with the provisions of § 72.10 of the zoning regulations
"The posting of a sign on the premises required by [the local regulations] is complementary to, and not in derogation of, the statutory notice. Such regulations are generally adopted by a municipality as a practical and necessary means of giving effective notice of the pending zoning application to as many affected, aggrieved, and potentially aggrieved persons as possible. When such notice is required by a municipal ordinance CT Page 15581 duly adopted, compliance with that ordinance is required." Wrightv. Zoning Board of Appeals, 174 Conn. 488, 491, 391 A.2d 146
(1978). "Compliance with the provision as to notice is a prerequisite to any valid action by the board." Smith v. F. W.Woolworth Co., 142 Conn. 88, 94, 111 A.2d 552 (1955). "[F]ailure to give proper notice constitutes a jurisdictional defect."Wright v. Zoning Board of Appeals, supra, 174 Conn. 491.
Defects in public notice do not necessarily deprive zoning boards of jurisdiction if the notice comports with the purposes of public notices. "Although the notice may not be misleading, it need not be exact . . ." Botticello v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 510897 (March 31, 1995) (Handy,J.). The court must consider the purposes of public notice in determining whether the notice was sufficient in a particular case. The "fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought." Slagle v. Zoning Board ofAppeals, 144 Conn. 690, 693, 137 A.2d 542 (1957). "A notice is proper if it fairly and sufficiently apprises the public of the action proposed, making possible intelligent preparation for participation in the hearing." Cocivi v. Planning and ZoningCommission, 20 Conn. App. 705, 708, 570 A.2d 226 (1990).
In another case the court determined whether the purposes of public notice were met when the particular requirements of the relevant regulation had not been met. Connecticut ResourcesRecovery Authority v. Planning Zoning Commission, Superior Court, judicial district of Litchfield, Docket No. 068880 (August 23, 1996) (Walsh, J.), appeal dismissed, 46 Conn. App. 563,699 A.2d 314, cert. denied, 243 Conn. 935, 702 A.2d 640, rev'd on other grounds, 46 Conn. App. 566, 700 A.2d 67, cert. denied,243 Conn. 936, 702 A.2d 640 (1997). The regulation relevant to that case required that a sign be posted on the affected property and in a conspicuous location clearly visible from a public street. The sign could not be posted on the affected property and still be visible from a public street, therefore the applicant received permission from the commission to place the sign on adjacent city property. The court concluded that action was sufficient because the applicant fulfilled the notice requirements "to the fullest extent possible." Id.
The rationale of the above decision is in accordance with the doctrine of substantial compliance. "Substantial compliance with CT Page 15582 a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. What constitutes substantial compliance is a matter depending on the facts of each particular case."Deangelis v. Waterbury Inlands Wetlands and WatercoursesCommission, Superior Court, judicial district of Waterbury, Docket No. 132755 (May 16, 1997) (Pellegrino, J.). In Connecticut, the doctrine of substantial compliance has been generally applied. See H S Torrington Associates v. Lutz Engineering Co.,185 Conn. 549, 555, 441 A.2d 171 (1981) (mechanic's lien statutes); Connecticut Resources Recovery Authority v. Planningand Zoning Commission, supra, Superior Court, Docket No. 068880 (local rule concerning posting of sign for public notice).
The applicable zoning regulation requires that a sign be placed on the affected property, in a conspicuous location and that it be visible from the public street. Canton zoning regs., § 72.10. The court must determine the objectives of the regulation to determine whether the compliance "is sufficient to assure its objectives." Deangelis v. Waterbury Inlands Wetlandsand Watercourses commission, supra. , Superior Court, Docket No. 132755. It is clear that the purpose of the zoning regulation through its three requirements, is to notify the public of an application and to identify the affected property to the public. If the affected property itself is not visible from a public street the literal mandate of the zoning regulation cannot be satisfied. In such a case, a landowner who complies, insofar as possible, with the regulation has satisfied the regulation. SeeConnecticut Resources Recovery Authority v. Planning and ZoningCommission, supra , Superior Court, Docket No. 068880. In this case Zacchera substantially complied with the requirements of § 72.10 of the zoning regulations. The property does not abut a public road. Colonial Road intersects with Route 44, a public street. Colonial Road is paved, has street signs similar to official town street signs, is as wide as typical neighborhood streets, is open to the public, and, for all intents and purposes is the functional equivalent of a public street.
Although the road from which it was visible was an access road to an industrial park open to the public and not technically a "public street," the conspicuous placement of the sign on the affected property was sufficient to assure the regulation's objectives in this case, and was in substantial compliance with the zoning regulations. Accordingly, I conclude that the plaintiffs' claim that the sign was not posted in compliance with CT Page 15583 § 72.10 of the regulations fails.
IV. FAILURE TO PROVIDE PLAINTIFFS WITH PERSONAL NOTICE
Section 7.6(g) of the wetlands regulations requires "[n]otification by certified mail describing the location and nature of the regulated activity(s) to all abutting property owners . . . no less than fifteen (15) days prior to the day of the regular meeting of the Agency at which action may be taken . . ." The plaintiffs contend that the defendants' failure to comply with this provision makes the wetlands agency's action voidable. The defendants contend that the wetlands agency is given the authority to impliedly waive any requirement of §§ 7.5 to 7.7, including § 7.6(g), of the wetlands regulations, by § 7.8 of the same regulations.
"Personal notice provisions can only be raised by persons entitled to receive notice, and if notice is not given the action taken is voidable and does not affect subject matter jurisdiction." (Internal quotation marks omitted.) Gourlay v.Georgetown Trust, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 0150535, 17 CONN. L. RPTR. 149 (June 19, 1996) (Dean, J.). See also Koskoff v.Planning Zoning Commission, 27 Conn. App. 443,446, 607 A.2d 1146, cert. granted, 222 Conn. 912,608 A.2d 695 (1992) (appeal withdrawn November 10, 1992).
The defendants' claim that the regulation requiring notice by mail to abutters can be waived by the wetlands agency, and that it can be waived implicitly, is not supported by a reasoned construction of the wetlands regulations. Section 7.8 of the wetlands regulations provides, in relevant part, "[a] portion or all of the requirements of Sections 7.5, 7.6 and/or 7.7 may be waived on application to the Agency at a pre-application meeting or after application to the Agency, if the Agency finds that the information is not necessary in order to decide upon the application. Upon application for such waiver, the Agency shallspecify which of the requirements need not be complied with."
(emphasis added). Waiver by implication does not make sense in the context of a regulation that requires the agency to "specify which of the requirements need not be complied with." Wetlands regulations § 7.8. No application was made to the wetlands agency for such a waiver, either in writing or orally, despite the fact that a specific form for such a waiver request is contained in the wetland regulations. CT Page 15584
Further, the construction of the regulation urged by the defendants does not stand up to a broader view of the relevant regulations. See State v. Desimone, 241 Conn. 439, 454,696 A.2d 1235 (1997) (describing statutory construction as requiring one to view statutes as cohesive). Section 7.8 allows waiver of the requirements of the preceding three sections by the agency if the wetlands agency "finds that the information is not necessary in order to decide upon the application." Sections 7.5, 7.6 and 7.7 contain twenty-four subsections in the aggregate. Twenty-three of the subsections describe the substance and form of the information to be given to the wetlands agency in support of the application. One subsection, 7.6(g), requires notice of the application by certified mail to abutting landowners. The most reasonable construction of the provision allowing the agency to waive requirements when it "finds that the information is not necessary" is that it applies to the twenty-three subsections delineating the information to be submitted to the wetlands agency and not the one subsection concerning personal notice. Moreover, the time for giving the notice, "at least fifteen (15) days before the regular meeting . . . at which action may be taken" had already passed, and it is difficult to see how the wetlands agency could have waived the notice retroactively. Wetlands regulations, § 7.6(g). "Where there is proof that a neighbor was not even mailed written notice, the regulation is not satisfied." Gourlay v. Georgetown Trust, supra, Superior Court, Docket No. 0150535, 17 CONN. L. RPTR. 149.
I conclude that the wetlands agency had no power under its regulations to dispense with the required personal notice to abutters of an application to conduct a regulated activity within a regulated area.
The defendants specifically argue that the work to be performed was not in a wetlands or watercourse, and that it was the custom of the wetlands agency to dispense with or waive a host of information typically required of applicants for a permit, when the wetland agency determines at a regular meeting that the proposed activity would not be a "significant activity."[9] This is borne out, the defendants assert, by the fact that the wetlands agency did not require a public hearing on Zacchera's application, as allowed by § 9.1 of its regulations, and by the testimony of its vice-chairman Philip OStapko.
The trouble with the defendants' argument is that the wetlands agency never stated in the record that it found that CT Page 15585 Zacchera's proposed activities would not have a significant impact on the regulated area; nor did it even discuss their significance or insignificance. While the wetland agency's findings of no significant activity may be implied from its granting of the permit without first holding a public hearing, an equally implicit waiver of the required written notice to abutters does not logically follow. The wetlands agency did not specifically grant the waiver of personal notice the defendants assert it granted, or even discuss it on the record.
The court recognizes that local administrative agencies are generally comprised of lay persons, and act informally. "Although proceedings before administrative agencies such as zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence, the hearings must be conducted so as not to violate the fundamental rules of natural justice." Pizzola v. Planning Zoning Commission,167 Conn. 202, 207, 355 A.2d 21 (1974). This general rule applies also to procedural rules. Gagnon v. Inland Wetlands WatercoursesCommission, 213 Conn. 604, 611 569 A.2d 1094, (1990) ("[A] local land use body is composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate.") See also, Grimes v. ConservationCommission, 243 Conn. 266, 281 703 A.2d 101 (1997) ("[B]ecause municipal inland wetland agencies are composed of volunteer lay persons, procedures and fact-finding must of necessity be somewhat more relaxed than for state agencies."), citing toGagnon, supra.
Relaxation of procedural safeguards however, cannot mean totally doing away with them. In this case, the plaintiffs received no notice at all. It is impossible to tell from the record of the wetlands agency's meeting that the members were even aware that there was no written notice to the abutters. Further, there is not a hint in the record that the agency consciously considered or decided whether to grant a waiver of such notice.
Informality typically conferred on local land use agencies cannot be stretched this far, and runs afoul of "[t]he rule applicable to the corporate authorities of municipal bodies . . . that when the mode in which their power is to be exercised is prescribed . . . that mode is to be followed." Jack v. Tarrant,136 Conn. 414, 419, 71 A.2d 705 (1950). CT Page 15586
The defendants also argue that personal notice to the plaintiffs was unnecessary under Grimes v. ConservationCommission, supra, 243 Conn. 266. In Grimes, the plaintiff abutter claimed due process and fundamental fairness violations because she was not given personal notice of a site inspection by the wetlands commission. Notice of the site walk by posting on the town clerk's office, however, was given, and the plaintiff had notice of all other hearings and meetings concerning the application. The Supreme Court held that the plaintiff's rights to fundamental fairness were not violated as the site walk was merely investigatory, and was neither a hearing or an integral part of the hearing process. Id., 279.
Grimes is inapposite to this case, and the defendants' reliance on it is misplaced. First, Canton's wetlands regulations specifically require personal notice to abutters of applications to conduct regulated activities. Second, the regular meeting at which the Zacchera application was considered, was conducted as a hearing. The wetlands agency heard from Zacchera's attorney, and he quoted the town planner. Third, it was an integral part of the process, as the wetlands agency was required to determine whether the proposed activity would have a significant impact on the regulated area, and if so, to schedule a public hearing. Therefore, this claim of the defendants is unpersuasive.
In the context of an appeal from a decision of a municipal inland wetland commission to the Superior Court, a plaintiff "must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Samperi v.Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). Also, if such a commission fails to state any reasons in support of its decision to approve an application, a reviewing court "must search the record of the hearings before the commission to determine if there is an adequate basis for its decision." Id,
588-89.
The court has done so in the present case, and finds that although there was substantial evidence in the record to justify an unexpressed finding of no significant activity, there is nothing in the record that demonstrates an adequate basis for a waiver of the personal notice required by § 7.6(g).
In the present case, § 7.6(g) of the wetlands regulations expressly required the applicant, Zacchera, to notify the plaintiffs, as abutting landowners, by certified mail of his CT Page 15587 application for permission to conduct a regulated activity. This failure to do so, and the wetlands agency's failure to order it, provided the plaintiffs with no notice at all of its actions. As the right to fundamental fairness in administrative proceedings encompasses a variety of procedural protections, including the right to adequate notice, see Grimes v. Conservation Commission,
supra, 243 Conn. 273, n. 11, I find that the action of the wetlands agency was voidable by the action of these plaintiffs. Hence, as the plaintiffs are entitled to personal notice, they also are entitled to raise the issue of its lack. See Lauer v.Zoning Commission, 220 Conn. 455, 600 A.2d 310 (1991).
Accordingly, I conclude that the wetlands permit granted to Zacchera is invalid.
The plaintiffs argue that the invalidation of the wetlands permit automatically undercuts and voids the site plan approval granted by the commission. I disagree. See Arway v. Bloom,29 Conn. App. 469, 479-80, 615 A.2d 1075 (1992) appeal dismissed,227 Conn. 799, 801-802, 633 A.2d 281 (1993).
V. CLAIM THAT ZACCHERA'S ACTIONS WILL UNREASONABLY POLLUTE, IMPAIR OR DESTROY THE PUBLIC TRUST AND THE NATURAL RESOURCES OF THE STATE
As the plaintiffs properly point out, General Statutes § 22a-16 creates a right of action by any person to bring suit for declaratory and equitable relief against any person "for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction." See Kenney v. Old Saybrook,237 Conn. 135, 161, 676 A.2d 795 (1996) and cases therein cited. The plaintiffs have established that trees, bushes and undergrowth have been and will be clear cut in the regulated buffer area. They have also testified that a variety of animals and birds, including red foxes, porcupines, wild turkeys, and red tailed hawks were seen on the property. Even if the latter were true, they introduced no evidence that any of the trees, flora, or wildlife are rare, endangered, threatened or protected species. Nor was there any evidence that the wildlife would be destroyed or even adversely affected. Nor have they shown that any of Zacchera's activities did cause, or would have the effect of causing, unreasonable pollution, impairment or destruction of the state's natural resources. Accordingly, this claim fails. CT Page 15588
VI. PLAINTIFFS' CLAIM OF NUISANCE
The elements of a private nuisance are: 1) a condition complained of having a natural tendency to create a danger and inflict injury on a person or property; 2) the danger created is a continuing one; 3) the use of the land was unreasonable and unlawful, and: 4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. See Tomasso Bros.,Inc. v. October Twenty-Four, Inc., 221 Conn. 194, 197,602 A.2d 1011 (1992).
Apart from the claimed invalidity of the permits, the plaintiffs' claim of nuisance rests wholly upon the noise created by Zacchera's activities. I find from the evidence, however, that most of the noise arose out of the site construction work, such as the grading and graveling, and not from his ongoing business operations. As the site construction work is finite in time, and not of a continuing nature, the plaintiffs have clearly not met the second element of the test.
Moreover, the frequency and intensity of the noise levels as testified to by the plaintiffs were not sufficient to show that they were so annoying and intrusive or unreasonable, as to constitute a nuisance to an objectively reasonable person. Finally, there was no expert evidence introduced by the plaintiffs to show that the noise emanating from Zacchera's activities sufficiently exceeded the ambient noise standard from all of the other activities in the light industrial zone bordering the plaintiff's properties, so as to affect the health, safety or welfare of persons in the position of the plaintiffs. See General Statutes § 22a-67, et seq. Therefore, the plaintiffs have not met the first element of the test. Finally, as Zacchera was performing the site work under presumably valid permits and pursuant to the "stand still" agreement reached by the parties and approved by this court, his activities cannot be held to have been unlawful.
For the foregoing reasons, the plaintiff's nuisance claim has no merit.
 CONCLUSION
In sum, the court agrees with the plaintiffs' claim that the lack of written notice to them of Zacchera's application for the CT Page 15589 wetlands permit was in violation of the wetlands regulations, and disagrees with the plaintiffs on all of their other claims.
Accordingly, judgment may enter for the plaintiffs on the second count of the amended complaint declaring the defendant Zacchera's inland wetlands permit invalid. Judgment may enter for the defendants on all of the plaintiffs' other counts and claims.
The court has considered the equities involved, and the balancing of harms to the plaintiffs and the defendant, Zacchera, including the relative hardships and benefits to each, and declines, in the exercise of its discretion, to issue a mandatory injunction to restore the property to its original condition. The court, also in the exercise of its discretion, declines to issue a prohibitory injunction to the defendant Zacchera from continuing his activities on the property, as unnecessary, as any such activity would be controlled and limited by his lack of a valid wetlands permit. The court may presume that Zacchera will obey the law.
Because the rationale of land use planning procedures is strengthened by the disposition of such cases on their merits, Zacchera's application is hereby remanded to the defendant wetlands agency to be considered by it at a regularly scheduled meeting after notice is duly given to abutting landowners as required by its regulations. See Koepke v. Zoning Board ofAppeals, 230 Conn. 452, 458-459 A.2d 983 (1994) (Koepke II);Miniter v. Zoning Board of Appeals, 34 Conn. App. 552, 555,642 A.2d 67 (1994).
No costs are taxed to any party.
Teller, J.