[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Barbara P. Dahle, appeals from a November 21, 2000 vote of the defendant, Burlington Planning and Zoning Commission ("the commission") rejecting her application for a special permit to remove gravel from her property on Spielman Highway in Burlington.
The record as submitted by the commission shows as follows. On or about September 27, 2000, the plaintiff submitted a special permit application to the commission, seeking approval for the excavation and removal of 30,000 cubic yards of gravel from her property. (Return of Record ("ROR"), Item A.) The gravel removal project proposed the use of four trucks making approximately ten to fifteen trips per day for the period of one year. (ROR, Item A.) The plaintiff's property is zoned residential and contains a portion of Bradley Brook, a fish and wildlife habitat. (ROR, Items A, G.) Access to the property is from a portion of the adjacent state Route 4, where traffic speeds approach fifty miles per hour. (ROR, Items G, K.)
A public hearing was held on November 8, 2000, at which the plaintiff was represented by an attorney and a project engineer. (ROR, Item R, Transcript, pp. 1-2.) Also present at the public hearing were town residents, who voiced their objections. (ROR, Item R, pp. 11 and following.) Other residents submitted objections in writing. (ROR, Items T, V.) One concern of the residents was other gravel excavation projects that had taken place in Burlington resulting in large visible gravel pits. (ROR, Item R, pp. 15, 17.) The plaintiff's own attorney referred to a previous excavation, conducted by a third party applicant on a premises owned by the plaintiff, that had been subject to criticism. (ROR, Item R, p. 1.) The commission heard evidence about the traffic at the proposed new exit from the site, (ROR, Item R, pp. 9-10), and about environmental effects on Bradley Brook. (ROR. Item R, p. 10.)
After consideration of the evidence presented, a motion was made on November 21, 2000, to grant the plaintiff's application. (ROR, Item S, p. 5.) By a vote of 1 in favor and 6 opposed, the motion failed. (ROR, Item S, p. 5.) The minutes of the meeting reflect that members of the commission gave individual reasons for their position, including traffic and environmental concerns. (ROR, Item S, pp. 4-5.) No formal reasons for CT Page 15531 the decision were stated by the commission, however. This appeal followed.[1]
The plaintiff raises three issues in the appeal. The first two issues are related — that the commission did not act in accordance with its regulations in denying the permit and that the commission erred in relying on the need for a tree buffer in rejecting the application. For her third issue, the plaintiff asserts that there was insufficient evidence in the record to support the commission's decision.
The regulations of the commission relating to excavation of gravel, § 12-01 et seq., (ROR, Item W), clearly mandate that the plaintiff meet certain requirements for excavation. These include: (1) Proof of the elimination of detrimental conditions such as traffic hazards (§ 12-01 (F)) and harm to water courses (§ 12-01 (F)(a); (2) An application showing buffer areas (§ 12-04 (20)), means of screening from the highway and neighboring property owners (§ 12-04 (22)), details of landscaping to prevent erosion and related hazards (§ 12-04 (23)), and proposed vehicular access and egress at the site (§ 12-04 (24)); (3) A finding by the commission that no watercourse is altered in any way except as approved by the commission (§ 12-05 (D)) and that there is screening of operations from the view of highway traffic and neighboring property owners (§ 12.05(S)).
Our Appellate Court has stated that "[i]f, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner." (Citations omitted; internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission, 55 Conn. App. 533, 539 (1999); see also Irwin v.Planning Zoning Commission, 244 Conn. 619, 627 (1998) ("considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit.") Here, the requirements that were addressed by the commission are stated in the commission's regulations. Thus, the first two grounds of appeal are without merit. The Children's School, Inc. v. Zoning Board,
66 Conn. App.' 615, 626 (2001). The remaining issue becomes whether the commission, based upon the record before it, acted without justification.
The standard of review in the case of a special permit where there are no reasons stated by the commission "requires the court to search the entire record to find a basis for the commission's decision." (Citations omitted; internal quotation marks omitted.) Project Hamden/North Havenfrom Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 544 (1991); Zieky v. Town Plan ZoningCT Page 15532Commission, 151 Conn. 265, 268 (1963).[2] The court must sustain the decision of the commission if there is substantial evidence in the record to support its decision. Project Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning Zoning Commission, supra, 545;Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540-41
(1987).
The record discloses three reasons to support the decision of the commission. In each instance the plaintiff questions whether there was substantial evidence in the record to support these reasons. The first item is that of traffic safety. The plaintiff received "concept approval" from the Connecticut Department of Transportation for the construction of an exit driveway from the site. She claims that this determination was sufficient for the commission to approve her application. This tentative approval was based, however, upon speeds on Spielman Highway of forty miles per hour. The DOT engineer noted that "sight line distances will be confirmed by the D.O.T. Permit Inspector before the driveway is used. A separate and additional review will be required by this office if development is proposed at this site." (ROR, Item G.)
The record also discloses a letter from James Thompson of Buck Buck Engineers who serves as the town engineer for Burlington. He states: "The [DOT] study was based on a 40 MPH speed and will probably work satisfactorily for 40 MPH. It has been my experience that very few people drive the Spielman Highway at 40 MPH either up hill or down. I also note that to attain the 40 MPH sight lines, practically all the trees along the frontage will be cut down." (ROR, Item K.)
In addition the record indicates that the project would take approximately one year to complete, would involve removing approximately 30,000 cubic yards of gravel, and would necessitate heavy dump trucks, fully loaded with gravel, making ten to fifteen trips per day. (ROR, Item R, pp. 2-5.) The public testimony indicated that numerous accidents have occurred on Route 4, including a fatal accident just one week prior to the public hearing. (ROR, Item R, pp. 14-18.) This evidence provides a basis in fact for the decision of the commission. "The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved. . . ." (Citations omitted; internal quotation marks omitted.) Raczkowski v. Zoning Commission,53 Conn. App. 636, 643 (1999).[3]
The second reason in the record is the possible damage to Burlington Brook and Bradley Brook that run through the premises. Correspondence from Don Mysling, Senior Fisheries Biologist at the Department of Environmental Protection, indicates his apprehensions with the CT Page 15533 plaintiff's land use change. (ROR, Item M, p. 1.) The plaintiff argues that Mysling's letter is defective because it overstates the amount of the plaintiff acreage to be subject to extraction and also states that operations will take place in Bradley Brook.
Even if these criticisms are correct, the Mysling letter makes a further point that the agency may rely upon. Raczkowski v. ZoningCommission, supra, 53 Conn. App. 643. Mysling states that there should be a minimum buffer zone of 100' between the gravel removal operations and the brooks. He relies upon a DEP report attached to his letter for this conclusion. This buffer will prevent damage to the aquatic ecosystems. (ROR, Item M, p. 3.) According to Mysling, the record discloses that the gravel removal operations will take place closer to the brooks than 100'. (ROR, Item M, p. 2.; see also ROR, Item G, Sheet 2.)
Further the record discloses that a fishing enthusiast, Bob Cole, also supported the 100' barrier. He stated: "First of all the removal of the trees will . . . raise the water temperature . . . and also the sand that then flows in, we had the same thing here at Torrington where all of the engineering requirements were met . . . there was a sand pit put in and blowing just simply the drying out and the blowing of the sand into the creek have flooded the habitat and therefore, decreased the trout population in that area." (ROR, Item R, p. 17.)
The plaintiff also contends that the approval of the building of a bridge over Bradley Brook by the Burlington Inland Wetlands Commission indicates that the environmental damage was minimal. The decision of the inland wetlands commission is, however, not binding on the commission in deciding whether to approve the application for removal of earth products. "The weight or significance to be accorded [the wetlands'] report by the zoning commission depends, however, on the application before it; how much weight the report should be given is a matter of discretion for the commission." Arway v. Bloom, 29 Conn. App. 469, 480
(1992), appeal dismissed, 227 Conn. 799 (1993).
The final reason in the record to support the decision of the commission was the requirement in the regulations, § 12-04 (22), that the proposed project be screened from the view of the highway and from the nearby property owners. The plaintiff claims that sheet 2 of the submitted map, ROR, Item G, shows a woodland buffer remains on the site. The record shows that the project would require the removal of virtually all the trees along the edge of Route 4 to obtain the 500' sight line in both directions. (ROR, Item K, Letter of Town Engineer; see also ROR, Item G, Sheet 2, Statement of Plaintiff's Engineer; ROR, Item R, Transcript, p. 5.) CT Page 15534
Members of the Commission could conclude from their own personal knowledge that noise and dust generated by the equipment at the site would infringe on the neighbor's quiet enjoyment of the property. The commission was also aware of the fact that another excavation and gravel removal project nearby had created a public nuisance. (ROR, Item R, p. 1.) These reasons, based upon sufficient evidence, justify the decision of the commission to deny the plaintiff's application. Red HillCoalition, Inc. v. Conservation Commission, 212 Conn. 710, 718 (1989).
Therefore, the appeal is dismissed.
Henry S. Cohn, Judge